107  T.C. No. 11


UNITED STATES TAX COURT


SEALY CORPORATION AND SUBSIDIARIES, f.k.a. THE OHIO MATTRESS
COMPANY AND SUBSIDIARIES, ET AL.,[1] Petitioners <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent


Docket Nos. 18761-92, 3028-93,          Filed October 21, 1996.
            3029-93, 3030-93,
            6266-93, 6267-93,
            6268-93, 6269-93.


        Ps had net operating losses for tax years 1989 to
    1992 from deductible expenses they incurred to comply
    with various requirements of Federal law; i.e., the
    Internal Revenue Code, the 1934 Securities and Exchange
    Act, and the Employee Retirement Income Security Act of
    1974.

---

        [1] Cases of the following petitioners are consolidated
    herewith:  Sealy Corp. & Subsidiaries, f.k.a. The Ohio Mattress
    Co. & Subsidiaries, docket nos. 3028-93 and 6266-93; The Ohio
    Mattress Co. Licensing and Components Group & Subsidiaries,
    f.k.a. Sealy, Inc. & Subsidiaries, docket nos. 3029-93, 6267-93,
    and 6268-93; and Sealy Mattress Co. & Subsidiaries, f.k.a. Ohio-
    Sealy Mattress Manufacturing Co. & Subsidiaries, docket nos.
    3030-93 and 6269-93.

Net operating losses generally may be carried back 3 years. Sec. 172(b)(1)(A), I.R.C. However, specified liability losses may be carried back 10 years. Sec. 172(b)(1)(C), (f)(1)(B), I.R.C. Ps treated their losses as specified liability losses and carried them back to their tax year ending Nov. 30, 1985.

Held, Ps' regulatory compliance costs are not specified liability losses.

Stephen P. Kresnye and Joseph A. Castrodale, for petitioners.

Elsie Hall, for respondent.

OPINION

COLVIN, Judge: This case is before the Court on petitioners' motions for partial summary judgment.

Respondent determined the following deficiencies in petitioners' Federal income tax:

| Petitioner | Year Ending | Deficiency |
|---|---|---|
| Sealy Corp. | Nov. 30, 1983 | $225,754.00 |
| Sealy Corp. | Nov. 30, 1984 | 648,717.48 |
| Ohio Mattress Co. | Dec. 30, 1984 | 3,630,737.24 |
| Sealy Corp. | Nov. 30, 1985 | 64,678.74 |
| Ohio Mattress Co. | Dec. 31, 1985 | 49,863.34 |
| Sealy Corp. | Nov. 30, 1986 | 6,816,632.00 |
| Ohio Mattress Co. | Dec. 30, 1986 | 447,617.00 |
| Sealy Corp. | Nov. 30, 1988 | 13,115,655.00 |

Petitioners seek a partial summary judgment relating to their net operating loss carrybacks. They contend that $2,447,933 of expenses they incurred from 1989 to 1992 is specified liability losses under section 172(f)(1)(B) and thus

may be carried back 10 years.  This is the first case in which we, or, to the best of our knowledge, any court, has decided the scope of section 172(f)(1)(B).  As discussed below, we hold that petitioners' compliance expenses at issue here are not specified liability losses, and we deny petitioners' motion for partial summary judgment.

A motion for summary judgment or partial summary judgment may be granted if there is no genuine issue of material fact and the decision can be rendered as a matter of law.  Rule 121; <u>Shiosaki v. Commissioner</u>, 61 T.C. 861, 862-863 (1974).  The parties agree that there is no material fact in dispute relating to the motion.  The parties have settled all of the other issues in this case.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

<u>Background</u>

A. <u>Petitioners</u>

Petitioners are corporations the principal places of business of which were in Seattle, Washington, when the petitions were filed.

Petitioners used the accrual method of accounting and reported their income on fiscal years ending November 30.

B.    <u>The 1970 Public Offering</u>

Petitioners were privately owned before 1970 and thus were not subject to the reporting requirements of the Securities and Exchange Act of 1934 (the 1934 Act), ch. 404, 48 Stat. 881 (current version at 15 U.S.C. secs. 78a-78lll (1994)).  The Ohio Mattress Co. first offered its stock for public sale in February 1970.  The reporting requirements of the 1934 Act have applied to petitioners since 1970.

The 1934 Act requires petitioners to file quarterly and annual financial reports with the Securities and Exchange Commission (SEC).  Petitioners incurred expenses of $1,808,309 in taxable years 1989 to 1992 for professional services to comply with reporting, filing, and disclosure requirements imposed by the 1934 Act.  Petitioners paid auditing and professional fees to KPMG Peat Marwick, Ernst & Whinney, and Ernst & Young to represent petitioners before the SEC's chief accountant's office and to prepare SEC registration statements  S-1 and S-4 relating to public securities offerings.  Petitioners incurred these expenses to comply with section 13(a)(2) of the 1934 Act, 15 U.S.C. sec. 78m, which requires petitioners to file quarterly and annual reports with the SEC and to have the annual reports audited by an independent public auditor.

C.    <u>Petitioners' Employee Benefits Plans</u>

Before 1985, petitioners adopted various employee benefit plans for their employees.  As employee benefit plan

administrators, petitioners are subject to the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, sec. 103(a)(1)(A), 88 Stat. 841, 29 U.S.C. sec. 1023(a)(1)(A) (1994). ERISA requires administrators of employee benefit plans to use independent qualified public accountants to publish various reports relating to the plan. Id. As a result, petitioners paid auditing and professional fees of $100,650 to KPMG Peat Marwick, Ernst & Whinney, and Ernst & Young from 1989 to 1992 to examine and prepare financial statements for petitioners and their employee benefit plans.

D.   The 1986 Acquisitions and Section 338 Elections

In December 1986, Sealy Mattress Co., formerly known as Ohio-Sealy Mattress Manufacturing Co., a subsidiary of the Ohio Mattress Co., bought the stock of Slumber Products Corp., Sealy Mattress Co. of Albany, Inc., Sealy Mattress Co. of Illinois, Inc., Sealy of Minnesota, Inc., Sealy of Connecticut, Inc., the Maryland Bedding Co., Sealy of Maryland and Virginia, Inc., the Metcalfe Brothers, Inc., and Sealy Mattress Co. of Kansas City, Inc. Sealy Mattress Co. bought Sealy of Michigan, Inc., in April 1987.

Each of these companies (the acquired companies) had license agreements with Sealy, Inc., which is now known as the Ohio Mattress Co. Licensing & Components Group. All but two of the acquired companies owned voting stock in Sealy, Inc. After the 1986 acquisitions, the Ohio Mattress Co. indirectly owned 77.49

percent of Sealy, Inc.  In December 1986, Sealy Mattress Co. bought 4.37 percent of Sealy, Inc. from individual shareholders. Thereafter, the Ohio Mattress Co. indirectly owned 81.86 percent of Sealy, Inc.'s voting stock.

On September 15, 1987, petitioners timely elected to treat the stock purchases (except Sealy, Inc., and Sealy of Michigan) as asset acquisitions under section 338.

E.   Petitioners' IRS Audits

The Internal Revenue Service (IRS) audited petitioners' tax returns for the years ending November 30, 1987, November 30, 1988, April 24, 1989, November 30, 1989, November 30, 1990, November 30, 1991, and November 30, 1992.  The IRS examined petitioners' books, records, and tax filings relating to the acquisitions.  Petitioners paid Ernst & Young, American Appraisal Associates, and other accounting and law firms for services relating to the 1991 and 1992 IRS audits of petitioners' 1987, 1988, and 1989 tax years.

Most of petitioners' IRS examination expenses related to the IRS audit of the acquisitions, the section 338 elections, and petitioners' return for the tax year ending November 30, 1987.

Petitioners paid $567,974 in 1991 and 1992 for accounting and legal services relating to IRS audits of petitioners' 1987 tax year.  Petitioners incurred the expenses to comply with

section 7602, which allows the IRS to examine taxpayers' books and records to ascertain whether a return is correct.

Petitioners reported that they had losses of $26,441,402 for 1989, $60,447,014 for 1990, $35,262,161 for 1991, and $11,772,384 for 1992 before taking into account net operating loss carrybacks or carryforwards.

On April 29, 1994, petitioners filed amended returns for their tax years ending November 30, 1989, 1990, 1991, and 1992. Petitioners filed an amended return for their tax year ending November 30, 1985, on April 29, 1994. On it, petitioners claimed a carryback of $6,484,484 for specified liability losses under section 172(f)(1)(B). Specified liability losses reported on petitioners' 1989, 1990, 1991, and 1992 amended returns do not exceed the amount of net operating losses reported on those returns.

Respondent determined that petitioners may deduct $4,007,551 as specified liability losses and $2,476,933[2] as a loss subject to the general 3-year carryback and 15-year carryforward under section 172.

---

[2] Petitioners concede that they may not deduct $29,000 of this amount. Thus, the amount in dispute is $2,447,933.

The following losses are in dispute:

| Tax year ending | Acctg fees re: audited financial statements and SEC regis. statements | Acctg fees re: employee benefits financial statements | Prof. fees Re: IRS audit |
|---|---|---|---|
| 11/30/89 | $631,109 | $34,450 | -- |
| 11/30/90 | 552,000 | 24,500 | -- |
| 11/30/91 | 337,700 | 24,500 | $140,186.50 |
| 11/30/92 | 287,500 | 17,200 | 427,787.50 |

Petitioners reported that they had losses on their 1989, 1990, 1991, and 1992 returns, part of which petitioners carried back as specified liability losses under section 172(b)(1)(C) to the year ending November 30, 1985. Petitioners reported taxable income of more than $6,484,484 on the returns they originally filed for 1985. Petitioners' specified liability losses included payments to their public auditors and to the SEC in connection with petitioners' compliance with the 1934 Act and ERISA and payments for legal and accounting services in connection with the IRS audits.

The parties agree that the SEC and ERISA professional fees and the IRS examination expenses described above are deductible under chapter 1.

## Discussion

The parties have stipulated the amount of petitioners' net operating losses. The only issue for us to decide is whether petitioners may carry those losses back 10 years or 3 years.

A.  <u>Ten-Year Net Operating Loss Carryback for Specified</u>
    <u>Liability Losses</u>

    1.  <u>Ten-Year Net Operating Loss Carryback</u>

Generally, a taxpayer may carry a net operating loss back 3 years before the loss year and forward 15 years after the loss year.  Sec. 172(b)(1)(A).  However, a taxpayer that has a specified liability loss under section 172(f) may carry that loss back to each of the 10 tax years preceding the loss year.  Sec. 172(b)(1)(C).

This 10-year carryback includes product liability and tort losses and nuclear decommissioning expenses.  Sec. 172(f)(1), (3).  The 10-year carryback was enacted for product liability losses in 1978.  Sec. 172(j); Revenue Act of 1978, Pub. L. 95-600, sec. 371(b), 92 Stat. 2859.  It was extended to specified liability and tort liability losses and costs of decommissioning nuclear power plants (section 172(k)) in 1984.  Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 91(d)(2), 98 Stat. 606.[3]

---

[3]The Revenue Reconciliation Act of 1990, Pub. L. 101-508, sec. 11811(b)(1), 104 Stat. 1388-532, combined sec. 172(j) (relating to product liability losses) and sec. 172(k) (relating to deferred statutory or tort liability losses and nuclear decommissioning costs) and redesignated them as sec. 172(f) (providing rules relating to specified liability losses), effective for net operating losses for tax years beginning after 1990.

2. <u>Specified Liability Losses</u>

Section 172(f) defines a specified liability loss in
pertinent part as follows:

> (1) In general.--The term "specified liability
> loss" means the sum of the following amounts to the
> extent taken into account in computing the net
> operating loss for the taxable year:

>     *      *      *      *      *      *      *

> (B) Any amount (not described in subparagraph
> (A)) allowable as a deduction under this chapter
> with respect to a liability which arises under a
> Federal or State law * * * if--

> (i) * * * the act (or failure to act)
> giving rise to such liability occurs at least
> 3 years before the beginning of the taxable
> year,

>     *      *      *      *      *      *      *

> A liability shall not be taken into account under
> subparagraph (B) unless the taxpayer used an
> accrual method of accounting throughout the period
> or periods during which the acts or failures to
> act giving rise to such liability occurred.

> (2) Limitation.--The amount of the specified
> liability loss for any taxable year shall not exceed
> the amount of the net operating loss for such taxable
> year.

The 10-year carryback for specified liability losses
described in section 172(f)(1)(B) applies if:

(1) The taxpayer took the specified liability loss into
account in computing its net operating loss for the taxable year;

(2) the expense resulting in the specified liability loss is
deductible under chapter 1 of the Internal Revenue Code;

(3) the liability with respect to which the taxpayer incurred the expense arose under a Federal or State law;

(4) the act or failure to act which gave rise to the liability occurred at least 3 years before the taxable year at issue;

(5) the taxpayer used the accrual method of accounting throughout the period in which the acts or failures to act giving rise to the liability occurred; and

(6) the specified liability loss for any taxable year does not exceed the net operating loss for that year.  Sec. 172(f)(1)(B) and (2).

The parties agree that petitioners meet requirements (1), (2), (5), and (6).  To prevail, petitioners must also meet requirements (3) and (4).

Deductions are a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to any deductions they claimed on their returns.  Rule 142(a); Deputy v. DuPont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115 (1933).

B.   Whether the Liability for Which Petitioners Incurred the Expense Arose Under a Federal or State Law

1.   Petitioner's Liability To Pay for Professional Services

To be a specified liability loss, the liability with respect to which petitioners incurred the expense must have

arisen under a Federal or State law.  Sec. 172(f)(1)(B).
Petitioners argue that their liability to pay accounting and
professional fees and IRS examination expenses arose under
Federal law.

We disagree.  It is true that the 1934 Act, ERISA, and the
Internal Revenue Code require petitioners to file financial
reports and disclosure statements, maintain and provide books and
records, and cooperate with IRS audits.  However, those
provisions do not establish petitioners' liability to pay the
amounts at issue.  Petitioners' liability to pay those amounts
did not arise until petitioners contracted for and received the
services.  Petitioners' choice of the means of compliance, and
not the regulatory provisions, determined the nature and amount
of their costs.  If, on the other hand, petitioners had failed to
comply with the auditing and reporting requirements or had not
obtained the particular services in issue here, their liability
would have been in amounts not measured by the value of services.
Thus, petitioners' liability did not arise under Federal law.

    2.  <u>Enactment of the Specific Liability Loss Rule With the
Economic Performance Rules</u>

Our interpretation is entirely consistent with the
legislative history which accompanied enactment of the
predecessor of the specified liability loss provision.  Before
1984, an accrual basis taxpayer generally could deduct an expense
for the tax year in which (a) all events had occurred which

determined the fact of the liability and (b) the amount of the liability could be determined with reasonable accuracy. United States v. Anderson, 269 U.S. 422, 437-438, 441 (1926). DEFRA sec. 91(a), 98 Stat. 606, provided that the all events test is not met before economic performance occurs. Sec. 461(h)(1). In the case of liability to pay a person who provides goods or services to the taxpayer, economic performance occurs as that person provides the goods or services to the taxpayer. Sec. 461(h)(2)(A)(i).

In the legislative history accompanying enactment of the economic performance rules, Congress described the pre-DEFRA law, gave an overview of the House bill, discussed the economic performance rules added by DEFRA, and described the predecessor of the specified liability loss rule. The conference report for DEFRA states in pertinent part:

G. Accounting Changes

1. Premature accruals

\* \* \* \* \* \* \*

Economic Performance

\* \* \* \* \* \* \*

Net operating loss carrybacks

The House bill provides a 10-year carryback for net operating losses attributable to certain liabilities deferred under these provisions. The bill also provides a special carryback rule for losses incurred in connection with the decommissioning of a nuclear power plant. Such

losses may be carried back to each of the taxable years during the period beginning with the taxable year in which the plant was placed in service. No loss, however, may be carried back to a taxable year beginning before January 1, 1984, unless it may be carried back without regard to these rules.

The provisions of the bill apply generally to expenses incurred (without regard to the economic performance requirement) after the date of enactment.

\* \* \* \* \* \* \*

Conference Agreement

The Conference Agreement generally follows the House bill, with modifications.

\* \* \* \* \* \* \*

H. Conf. Rept. 98-861, at 871-873 (1984), 1984-3 C.B. (Vol. 2) 1, 125-127.

The conference report states that the 10-year carryback of specified liability losses applies to "net operating losses attributable to certain liabilities deferred under these provisions." "These" provisions are the limits on premature accruals; i.e., the economic performance rules of section 461(h). This suggests that Congress intended the 10-year carryback to apply only to liabilities for which deduction is deferred by the economic performance rules. Petitioners' accrual of the deduction for the expenses at issue was not deferred by the economic performance rules. Since the economic performance rules do not limit petitioners' accrual of the deduction for the

compliance expenses at issue, we conclude that Congress did not intend those expenses to qualify as specified liability losses.

   3.  <u>Categories of Property Eligible for a 10-Year Carryback</u>

   Section 172(f) provides a 10-year carryback for product liability expenses, tort losses, and nuclear power plant decommissioning costs, among other specified liability losses. We think Congress intended the 10-year carryback for liability losses under section 172(f)(1)(B) to apply to a relatively narrow class of liabilities similar to the others identified by the statute.  Under the ejusdem generis rule of statutory construction, general words that follow the enumeration of specific classes are construed as applying only to things of the same general class as those enumerated.  <u>Kansas City S. Ry. Co. v. McNamara</u>, 817 F.2d 368, 372 (5th Cir. 1987); <u>Coleman v. Commissioner,</u> 76 T.C. 580, 588 (1981) (applying the rule of ejusdem generis to interpret "other casualty"); <u>Estate of Short v. Commissioner</u>, 68 T.C. 184, 193 (1977).  We think that the costs at issue here are routine costs and are not of the same general type as those other categories.

   Petitioners argue that according to the plain language of section 172(f)(1)(B), petitioners' costs of compliance with the 1934 Act, ERISA, and the Internal Revenue Code are specified liability losses.  We disagree.  There is nothing in the statute that plainly, or at all, for that matter, establishes that petitioners may carry their compliance costs back for 10 years.

We conclude that petitioners' compliance costs and other accounting expenses were not liabilities that arose under Federal or State law.

C.    Whether the Act or Failure To Act Which Gave Rise to the Liability Occurred at Least 3 Years Before the Taxable Years at Issue

To be a specified liability loss under section 172(f)(1)(B), the act giving rise to the liability under a Federal or State law must have occurred at least 3 years before the start of the taxable year.  Sec. 172(f)(1)(B)(i).  Petitioners' contention that they meet this requirement follows from their contention that their liability to pay those costs arose under Federal law to which they were made subject more than 3 years before the years at issue.  We disagree for the reasons stated above at par. B.  Petitioners make no other argument that the liability at issue arose more than 3 years before the years at issue.  Thus, we conclude that petitioners do not meet this requirement.

D.    Conclusion

We hold that petitioners' professional fees and IRS examination expenses are not specified liability losses under section 172(f)(1)(B), and thus are not eligible for the 10-year carryback under section 172(b)(1)(C).

To reflect the foregoing and concessions,

Orders will be issued

denying petitioners' motions

for partial summary judgment.