SEALY CORPORATION, and Subsidiaries, F.K.A. the Ohio Mattress Company and Subsidiaries, Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Sealy Corporation, and Subsidiaries, F.K.A. the Ohio Mattress Company and Subsidiaries, Petitioner–Appellant,

v.

Commissioner of Internal Revenue, Respondent–Appellee.

Sealy Corporation, and Subsidiaries, F.K.A. THE Ohio Mattress Company and Subsidiaries, Petitioner–Appellant,

v.

Commissioner of Internal Revenue, Respondent–Appellee.

The Ohio Mattress Company Licensing and Components Group and Subsidiaries, Petitioner–Appellant,

v.

Commissioner of Internal Revenue, Respondent–Appellee.

Sealy Corporation, and Subsidiaries, F.K.A. the Ohio Mattress Company and Subsidiaries, Petitioner–Appellant,

v.

Commissioner of Internal Revenue, Respondent–Appellee.

Sealy Mattress Co., and Subsidiaries, F.K.A. Ohio–Sealy Mattress Manufacturing Company and Subsidiaries, Petitioner–Appellant,

v.

Commissioner of Internal Revenue, Respondent–Appellee.

The Ohio Mattress Company Licensing and Components Group and Subsidiaries, F.K.A., Sealy, Incorporated and Subsidiaries, Petitioner–Appellant,

v.

Commissioner Of Internal Revenue, Respondent–Appellee.

Sealy Mattress Co., and Subsidiaries, F.K.A. Ohio–Sealy Mattress Manufacturing Co. and Subsidiaries, Petitioner–Appellant,

v.

Commissioner of Internal Revenue, Respondent–Appellee.

Nos. 98–70369, 98–70370, 98–70372, 98–70907, 98–71345, 99–70107, 99–70108, 99–70111.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 1999.

Filed March 26, 1999.

Joseph A. Castrodale, Calfee, Halter & Griswold, Cleveland, OH, for the petitioner-appellant.

Stuart L. Brown, Thomas J. Clark, United States Department of Justice, Washington, D.C., for the respondent-appellee.

Before: NOONAN, and TASHIMA, Circuit Judges, and RESTANI,[1] Judge.

NOONAN, Circuit Judge:

Sealy Corporation and its subsidiaries, formerly known as The Ohio Mattress Company and subsidiaries (Sealy) appeal the judgment of the tax court in favor of the Commissioner of Internal Revenue (the Commissioner). The tax court held that the professional expenses incurred by Sealy in complying with the Securities and Exchange Act of 1934 (the 1934 Act), the Employee Retirement Income Security Act of 1974 (ERISA) and an Internal Revenue Service (IRS) audit were not specified liability losses eligible for a ten year carryback under the Internal Revenue Code § 172(f)(1)(B) (1996). In this case of first impression, we affirm the judgment of the tax court.

**FACTS AND PROCEEDINGS**

Prior to 1970 Sealy was privately owned and not subject to the reporting requirements of the 1934 Act; in 1970 it offered its stock for public sale and became subject to the 1934 Act's requirements of filing quarterly and annual financial reports. *See* 15 U.S.C. § 78m. In the taxable years 1989–1992 Sealy incurred expenses of $1,808,309 in obtaining professional services to comply with these requirements. Prior to 1985, Sealy implemented employee benefit plans subject to ERISA, which required Sealy to use independent qualified public accountants to publish reports related to the benefit plan, *see* 29 U.S.C. § 1023; in the taxable years 1989–1992 Sealy paid professional fees of $100,650 to accountants for these reports. In 1991 and 1992 the IRS audited Sealy for the tax years 1987–1992. Sealy spent $567,974 on lawyers' and accountants' fees in complying with the 1991 and 1992 audits. On April 24, 1994 Sealy filed amended returns for 1989, 1990, 1991, and 1992, reporting operating losses for these tax years and claiming a carryback to 1985 for these and other specified liability losses under § 172(f)(1)(B). The Commissioner disallowed the carryback as to the SEC, ERISA and audit expenses. Sealy petitioned the tax court to allow the carryback to 1985 with the result that it would be entitled to a refund for that year.

On October 21, 1996 the tax court issued an opinion upholding the Commissioner. *Sealy Corp. v. Commissioner,* 107 T.C. 177, 1996 WL 599766 (1996). It held that Sealy's liability to pay for professional services "did not arise until [Sealy] contracted for and received the services. [Sealy's] choice of the means of compliance, and not the regulatory provisions, determined the nature and amount of their costs." Accordingly, the liabilities did not meet the requirements of § 172(f)(1)(B) of arising under federal law or of occurring at least

**1.** Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

three years before the beginning of the taxable year. The tax court also held that routine costs were not of the same general type as the product liability expenses, tort losses and nuclear powerplant decommissioning costs which constitute the other specified liability losses under § 172(f). Nor were these expenses subject to the economic performance rules of 26 U.S.C. § 461(h)(2)(A)(i). For all these reasons the tax court held that Sealy was not entitled to the ten year carryback.

Sealy appeals.

## ANALYSIS

Section 172(f) sets out "Rules relating to specified liability loss." Sealy's losses met several of the criteria of the statute: they are losses deductible under 26 U.S.C. § 162 or 165; Sealy uses an accrual method of accounting; the amount of the specified liability loss does not exceed the amount of the net operating loss for the taxable year. 26 U.S.C. § 172(f)(1)(A) & (f)(2). At issue is whether Sealy meets the requirements of § 172(f)(1)(B), which reads as follows:

(B) Any amount (not described in subparagraph (A)) allowable as a deduction under this chapter with respect to a liability which arises under a Federal or State law or out of any tort of the taxpayer if-

(i) in the case of a liability arising out of a Federal or State law, the act (or failure to act) giving rise to such liability occurs at least 3 years before the beginning of the taxable year, or

(ii) in the case of a liability arising out of a tort, such liability arises out of a series of actions (or failures to act) over an extended period of time a substantial portion of which occurs at least 3 years before the beginning of the taxable year.

Sealy contends that each of the deductions qualified as being incurred "with respect to a liability which arises under a Federal or State law." It argues that the obligation to file with the SEC and the obligation to publish reports under ERISA were liabilities arising under federal law and that the obligation to comply with the IRS in its audit was with respect to a liability or obligation under federal law.

There are no treasury regulations interpreting the statute, an oversight that does not help the Commissioner's case. Sealy presses the analogy afforded by 26 C.F.R. § 1.468A–1(b)(5) relating to the cost of nuclear decommissioning which includes all costs incurred in the dismantling of a nuclear powerplant that has permanently ceased production. These costs, Sealy notes, are specifically permitted to be carried back under § 172(f)(3). Sealy asserts that by a parity of reasoning the costs it seeks to deduct as specified liability costs may be carried back for ten years.

The language of the statute does not sustain Sealy's contention. Although § 172(f)(1)(B) begins by referring to "[a]ny amount ... with respect to a liability which arises under a Federal or State law," the statute goes on to be more specific and to speak of "a liability arising out of a Federal or State law" and "the act (or failure to act) giving rise to such liability...." 26 U.S.C. § 172(f)(1)(B)(i). It is, therefore, not simply an expense incurred with respect to an obligation under federal law but an act "giving rise" to the liability that qualifies as a specified liability under the statute. The act giving rise to each of the liabilities in question was the contractual act by which Sealy engaged lawyers or accountants. In each of these instances the act did not occur at least three years before the beginning of the taxable year.

Sealy's argument essentially is that the act giving rise to the liability is the first event in a chain of causes which gives rise to the liability. The argument leads to a reductio ad absurdum. The organization of the company gave rise to an obligation to comply with all pertinent state and federal laws and thereby gave rise to the liabilities incurred in complying with these laws. According to this logic, every corporation would have a specified liability car-

ryback for all costs the corporation incurred to comply with relevant laws. Congress did not create such a windfall.

The special provision governing the decommissioning of nuclear powerplants works against Sealy's position because in that case the regulation specially provides for the carryback in a way that is not provided for as to other types of specified liability losses.

It is unnecessary for the decision of this case to consider the economic performance rules of § 461(h).

**AFFIRMED**.