# HOST MARRIOTT CORPORATION

### v.

## UNITED STATES of America.

### No. DKC 99–699.

United States District Court, D. Maryland.

Aug. 8, 2000.

Shane T. Hamilton, Miller & Chevalier, Chartered, John B. Magee, McKee, Nelson, Ernst & Young LLP, Washington, DC, for Plaintiff.

Michael J. Salem, U.S. Dept. of Justice, Washington, DC, for Defendant.

## *MEMORANDUM OPINION*

CHASANOW, District Judge.

Plaintiff Host Marriott Corporation brings this action against the United States, seeking an income tax refund of over $22 million plus interest. Both parties have moved for summary judgment on the issue of liability. The issues are fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons stated more fully below, the court will GRANT the motion for partial summary judgment in favor of Plaintiff.

### *Background*

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The relevant facts underlying this action are undisputed.

Plaintiff is an accrual-basis taxpayer. During its 1991 tax year, Plaintiff reported a net operating loss of over $139 million, including approximately $60 million designated as "specified liability losses" pursuant to 26 U.S.C. § 172(f)(1). At issue in this case are two types of specified liability losses claimed by Plaintiff: approximately $7 million in payments pursuant to workers' compensation claims and nearly $46 million attributable to federal income tax deficiency interest. The workers' compensation payments stem from injuries sustained by Plaintiff's employees prior to Plaintiff's 1988 tax year. The federal income tax deficiency interest relates to income tax returns for fiscal 1977, 1978, and 1979 tax years. The Internal Revenue Service commenced an audit of those returns in 1981, concluded the audit in 1985, and finally settled its dispute with Plaintiff in 1991. Plaintiff argues it should be able to carry back the workers' compensation and income tax deficiency interest losses to the 1984 and 1985 tax years, which would have the effect of reducing its liability for those years by $22,158,017 plus interest.

 Plaintiff bears the burden of proving erroneous the Internal Revenue Service's determination that workers' compensation payments and federal income tax deficiency interest do not qualify as specified liability losses. *See Norfolk Southern Corp. v. Commissioner of Internal Revenue,* 140 F.3d 240, 244 (4th Cir. 1998) ("[D]eterminations of tax liability by the Commissioner are entitled to a presumption of correctness."). Moreover, " 'an income tax deduction is a matter of legislative grace and . . . the burden of clearly showing the right to the claimed deduction is on the taxpayer.' " *INDOPCO, Inc. v. Commissioner of Internal Revenue,* 503 U.S. 79, 84, 112 S.Ct. 1039, 117 L.Ed.2d 226 (1992) (quoting *Interstate Transit Lines v. Commissioner,* 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943)); *Halle v. Commissioner of Internal Revenue,* 83 F.3d 649, 652 (4th Cir. 1996).

### Discussion

The Internal Revenue Code specifically provides for the "carrying back" to three prior tax years or the "carrying forward" to fifteen following tax years of net operating losses. 26 U.S.C. § 172(b)(1)(A). However, in the case of so-called "specified liability losses," Congress has provided for an even greater carryback period, to each of the ten taxable years preceding the loss. 26 U.S.C. § 172(f). The Internal Revenue Code of 1991, relevant here, included the following applicable provision:

In general.—The term "specified liability loss" means the sum of the following amounts to the extent taken into account in computing the net operating loss for the taxable year:

(A) Any amount allowable as a deduction under section 162 or 165 which is attributable to—

(i) product liability, or

(ii) expenses incurred in the investigation or settlement of, or opposition to, claims against the taxpayer on account of product liability.

(B) Any amount (not described in subparagraph (A)) allowable as a deduction under this chapter with respect to a liability which arises under a Federal or State law or out of any tort of the taxpayer if—

(i) in the case of a liability arising out of Federal or State law, the act (or failure to act) giving rise to such liability occurs at least 3 years before the beginning of the taxable year, or

(ii) in the case of a liability arising out of a tort, such liability arises out a series of actions (or failures to act) over an extended period of time a substantial portion of which occurs at least 3 years before the beginning of the taxable year. A liability shall not be taken into account under subparagraph (B) unless the taxpayer used an accrual method of accounting throughout the period or periods during which the acts of failures to act giving rise· to such liability occurred. 26 U.S.C. § 172(f)(1). At issue in this case are whether the claimed specified liability losses "ar[ose] out of Federal or state law" and whether "the act (or failure to act) giving rise to such liability occur[red] at least 3 years before the beginning of the taxable year" within the definition of § 172(f)(1)(B).[1]

▪ A plain language reading of the statute supports Plaintiff's position. " 'Where, as here, the resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear.' " *Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991) (quoting *Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). The statutory language clearly poses two restrictions upon application of the deduction in this case. First, the claimed deduction must be a liability that arises out of Federal or state law. Both of Plaintiff's losses meet this requirement. The liability for federal income tax deficiency interest arises out of 26 U.S.C. § 6601(a) under a rate established by § 6621. The liability for workers' compensation payments arises out of various state laws. Second, the

claims must arise out of acts or failures to act more than three years earlier. In the case of the workers' compensation claims, the liability arose from injuries more than three years before the 1991 tax return. The federal income tax deficiency interest stems from the acts of filing tax returns in 1977, 1978, and 1979.[2]

▪ Defendant urges application of the canon of statutory construction known as *ejusdem generis* to support a narrower reading of the statute. "Under the principle of *ejusdem generis,* when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration." *Brogan v. United States,* 522 U.S. 398, 403 n. 2, 118 S.Ct. 805, 139 L.Ed.2d 830 (1998) (internal citations omitted). In the usual instance, the doctrine of *ejusdem generis* applies where a "catch-all" term precedes, or more often follows, an enumeration of specific terms in order to expand the list without identifying every situation covered by the statute. *See, e.g., United States v. Parker,* 30 F.3d 542, 552 (4th Cir.1994) (applying canon of *ejusdem generis* to the general phrase "separate apparatus intended for the recreation of children" where followed by the specific examples of "sliding boards, swingsets, and teeterboards."); *Canton Police Benevolent: Ass'n v. United States,* 844 F.2d 1231, 1236 (6th Cir.1988) (applying *ejusdem generis* rule to "life, sick, accident, or other benefits"); *United States v. Dixon,* 446 F.Supp. 236, 239 (D.Md.1978) (limiting application of doctrine of *ejusdem generis* to the phrase "any plate, stone, or other thing"). Section 172(f) includes three classes of expenses that qualify as specified liability losses: (1) amounts attribut-

---

1. In 1998, Congress amended 27 U.S.C. § 172(f)(1)(B) to include only amounts in satisfaction of a liability relating to reclamation of land, decommissioning of a nuclear power plant, dismantlement of a drilling platform, remediation of environmental contamination, or a payment for workers' compensation claims.

2. Defendant argues that the acts from which this liability arose were either the signing of the interest settlement agreement in October 1991 or the daily failure to pay the disputed amount. The court rejects such arguments and finds that the act triggering the application of 26 U.S.C. § 6601(a), or "giving rise to such liability," is the underpayment of taxes in the 1970s.

able to product liability, including expenses incurred in investigation or settlement; (2) amounts which arise under a Federal or State law where the act, or failure to act, giving rise to the liability occurs at least three years earlier; and (3) amounts which arise out of any tort where the liability arises out of a series of actions over an extended period of time, a substantial portion of which occurs at least three years earlier. Defendant urges that the second class is a general class of liabilities while the other two are specific classes, which share the distinguishing characteristic of "inherent delay." Therefore, Defendant argues that the second class must be read to require an element of inherent delay in the federal or state law liability.

The court does not agree that the principle of *ejusdem generis* applies in this case. Upon review, the construction of this statute does not signal application of the doctrine (in contrast to "tort liability, product liability, and other liability arising out of federal or state law"). Instead, the statute sets forth three similarly specific classes of specified liability losses in three separate subsections. While product and tort liability may be more narrow in scope than "liability which arises under federal or state law," the statutory and tort liability classes contain an actual delay restriction not required for product liability expenses. Congress specifically required that a specified liability loss under § 172(f)(1)(B) must have arisen from an act or failure to act three years earlier. The court sees no basis for imposing an additional requirement of "inherent delay" on top of those restrictions already specified by Congress.[3]

Thus, to the extent *Sealy v. Commissioner of Internal Revenue*, 107 T.C. 177, 1996 WL 599766 (1996), goes beyond the plain language of § 172(f)(1)(B), the court disagrees with the Tax Court. In *Sealy*, the Tax Court held that expenses incurred to comply with various requirements of the Internal Revenue Code, the Securities and Exchange Act, and the Employee Retirement Income Security Act do not qualify as specified liability losses. First, the *Sealy* court found that the taxpayer's liability for the accounting and professional fees at issue did not arise under federal law because the statutory provisions "do not establish petitioners' liability to pay the amounts at issue," but rather "Petitioners' choice of the means of ·compliance ... determined the nature and amounts of their costs." *Id.* at 184, 1996 WL 599766. Unlike in *Sealy*, the deductions in this case qualify as specified liability losses because Plaintiff's liability for workers' compensation claims and tax deficiency interest, and the amounts at issue, are set by federal or state law, not by Plaintiff's choice.

However, the Tax Court did not rest on the plain language of the statute. In dicta, the *Sealy* court imposed an additional requirement that the net operating loss at issue be a liability for which deduction is deferred by economic performance rules. 107 T.C. at 185, 1996 WL 599766. The Tax Court looked to the legislative history of the provision and relied upon the fact that Congress enacted § 172(f)(1)(B) at the same time as the economic performance rules. Such a diversion into the legislative history was unnecessary and inappropriate given the aforementioned bases for denial in the plain language of the statute.

In sum, the plain language of § 172(f)(1) offers little support for the IRS's position, and the court is unconvinced that the statute is "ambiguous." Rather, examining the plain language of the statute, it permits Plaintiff to avail itself of the provision's benefits. Because the statutory language is clear, there is no need to refer to the legislative history to resolve the matter. *Toibb*, 501 U.S. at 162, 111 S.Ct. 2197; *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117

---

3. The court notes that both workers' compensation claims and federal income tax deficiency penalties may also involve an "inherent delay," given the common delay in both resolution of workers compensation claims and the IRS audit process.

L.Ed.2d 391 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *Patten v. United States,* 116 F.3d 1029, 1035 (4th Cir.1997) ("We do not even look at legislative history unless there is an ambiguity on the face of the statute.").[4]

### Conclusion

For the foregoing reasons, the court will GRANT summary judgment on the issue of liability in favor of Plaintiff and against Defendant on all claims. A separate Order will be entered.

### ORDER

For the reasons stated in the accompanying Memorandum opinion, it is this ____ day of August, 2000, by the United States District Court for the District of Maryland, ORDERED that:

1. Plaintiff's motion for summary judgment BE, and the same hereby IS, GRANTED;

2. Defendant's motion for summary judgment BE, and the same hereby IS, DENIED;

3. Judgment BE, and the same hereby IS, entered in favor of Plaintiff and against Defendant on the issue of liability, with the amount to be determined;

4. The parties will submit to the court by **August 28, 2000,** a stipulation regarding the appropriate refund or a briefing schedule on the issue; and

5. The Clerk will transmit a copy of this Order and Memorandum Opinion to counsel for the parties.

---

4. Even if the court were to consider the statute ambiguous, as Defendant urges, the scant legislative history does not suggest a "clearly expressed legislative intent contrary to the plain language." *Toibb,* 501 U.S. at 162, 111 S.Ct. 2197 (internal citations omitted); *see* Defendant's Reply Brief at 5 (calling the legislative history "somewhat sparse and itself not entirely clear").