117 T.C. No. 13

UNITED STATES TAX COURT

INTERMET CORPORATION & SUBSIDIARIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent*

Docket No. 8246-97.                    Filed October 2, 2001.

In Intermet Corp. & Subs. v. Commissioner, 209
F.3d 901 (6th Cir. 2000), revg. and remanding 111 T.C.
294 (1998), the Court of Appeals remanded this case to
the Court to determine whether amounts that P paid to
satisfy its State tax liabilities and interest on
Federal and State tax liabilities, qualify as
"specified liability losses" within the meaning of sec.
172(f)(1)(B), I.R.C.

Held:  P's State tax liabilities and interest on
Federal and State tax liabilities qualify as "specified
liability losses" within the meaning of sec.
172(f)(1)(B), I.R.C.

_____

*This opinion supplements Intermet Corp. & Subs. v. Commissioner,
111 T.C. 294 (1998), revd. and remanded 209 F.3d 901 (6th Cir.
2000).

Eric R. Fox, Dirk J.J. Suringa, Hamish P.M. Hume, and Clifton B. Cates, for petitioner.

Wilton A. Baker, Alfred C. Bishop, Jr., Steven J. Hankin, and Teri A. Culberton, for respondent.

## SUPPLEMENTAL OPINION

WELLS, Chief Judge:  This case is before the Court on remand from the Court of Appeals for the Sixth Circuit in Intermet Corp. & Subs. v. Commissioner, 209 F.3d 901 (6th Cir. 2000), revg. and remanding 111 T.C. 294 (1998).  In Intermet Corp. & Subs. v. Commissioner, supra, the Court of Appeals held that Intermet Corporation and its subsidiaries (hereinafter petitioner) is eligible to carry back for 10 years pursuant to section 172(b)(1)(C), certain expenses, i.e., State tax liabilities and interest on Federal and State tax liabilities, provided that those expenses qualify as "specified liability losses" within the meaning of section 172(f)(1)(B).  The issue presented on this remand for further proceedings consistent with the Court of Appeals' opinion is whether the expenses so qualify as specified liability losses.  Unless otherwise indicated, section references are to sections of the Internal Revenue Code, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

### Background

This case was submitted to the Court on the basis of fully

stipulated facts and certain stipulated exhibits.  Our findings of fact in this case are set forth in full in Intermet Corp. & Subs. v. Commissioner, 111 T.C. 294 (1998), revd. and remanded 209 F.3d 901 (6th Cir. 2000).  For convenience, we only restate the findings of fact that are material to the issue presented.

Petitioner is the common parent of an affiliated group of corporations that manufacture precision iron castings for automotive and industrial equipment producers.  Petitioner filed consolidated Federal income tax returns for calendar years 1984 through 1993.  During those years, petitioner's members used the accrual method of accounting for both financial accounting and Federal income tax purposes.  During the years 1984 through 1993, Lynchburg Foundry Co. (Lynchburg) was a member of the consolidated group.

Petitioner reported a consolidated net operating loss (CNOL) in the amount of $25,701,038 on its 1992 Federal income tax return.  In October 1994, petitioner filed Form 1120X, Amended U.S. Corporation Income Tax Return, for 1992, claiming a carryback of $1,227,973 to 1984 for specified liability losses incurred by its members.  During 1992, petitioner's CNOL exceeded the sum of its claimed specified liability losses.

Respondent issued a notice of deficiency to petitioner determining a deficiency of $615,019 in its consolidated Federal income tax return for 1984 based upon the disallowance of a

substantial portion of the specified liability losses that petitioner claimed in its 1992 tax return. Petitioner subsequently conceded a portion of the disallowed specified liability losses, leaving for decision the status of $1,019,205.23 in purported specified liability losses incurred by Lynchburg during 1992.

The specified liability losses remaining in dispute consist of the following items:

| Disallowed Specified Liability Losses | Amount |
| --- | --- |
| State tax deficiencies | $717,617.00 |
| Interest on State tax deficiencies | 299,412.63 |
| Interest on Federal income tax deficiency | 2,175.60 |

The State of Michigan imposes a Single Business Tax on every person with business income in the State. Mich. Comp. Laws Ann. §208.1 to 208.23b (West 1986). During 1992, Lynchburg paid the aforementioned State taxes and interest to the State of Michigan following an audit of its 1986, 1987, and 1988 Michigan Single Business Tax returns. During 1992, Lynchburg paid the aforementioned interest to the Internal Revenue Service (the IRS) following an audit of petitioner's consolidated Federal income tax return for 1987 and in accordance with an agreed adjustment to Lynchburg's separate taxable income for that year. In 1992, Lynchburg properly deducted the additional State taxes and Federal and State interest described above under chapter 1 of the Internal Revenue Code.

## Discussion

Section 172(a) allows a "net operating loss deduction" for the aggregate of net operating loss carrybacks and carryovers to the taxable year. The term "net operating loss" (NOL) is defined in section 172(c) to mean the excess of deductions allowed by chapter 1 over gross income. Section 172(b) prescribes the periods for NOL carrybacks and carryovers. Section 172(b)(1)(A) generally provides that the period for an NOL carryback is 3 years and that the period for an NOL carryover is 15 years.[1] Section 172(b)(1)(C) provides a special rule that extends the carryback period from 3 years to 10 years for specified liability losses.[2] The term "specified liability loss" is defined in section 172(f), which provides in pertinent part:

> SEC. 172(f). Rules Relating to Specified Liability Loss.-- For purposes of this section--
>
> (1) In general.--The term "specified liability loss" means the sum of the following amounts to the extent taken into account in computing the net operating loss for the taxable year:

---

[1]Effective for taxable years beginning after Aug. 5, 1997, the carryback period for an NOL is 2 years and the carryforward period is 20 years. Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1082(a), 111 Stat. 950.

[2]The Omnibus Budget Reconciliation Act of 1990 (OBRA 1990), Pub. L. 101-508, sec. 11811(b), 104 Stat. 1388-532, combined former sec. 172(j) (relating to product liability losses) and 172(k) (relating to deferred statutory or tort liability losses) redesignating them sec. 172(f). The provision is effective for net operating losses for taxable years beginning after Dec. 31, 1990. OBRA 1990 sec. 11811(c), 104 Stat. 1388-534.

(A) Any amount allowable as a deduction under section 162 or 165 which is attributable to--

(i) product liability, or

(ii) expenses incurred in the investigation or settlement of, or opposition to, claims against the taxpayer on account of product liability.

(B) Any amount (not described in subparagraph (A)) allowable as a deduction under this chapter with respect to a liability which arises under a Federal or State law or out of any tort of the taxpayer if--

(i) in the case of a liability arising out of a Federal or State law, the act (or failure to act) giving rise to such liability occurs at least 3 years before the beginning of the taxable year, or

(ii) in the case of a liability arising out of a tort, such liability arises out of a series of actions (or failures to act) over an extended period of time a substantial portion of which occurs at least 3 years before the beginning of the taxable year.

A liability shall not be taken into account under subparagraph (B) unless the taxpayer used an accrual method of accounting throughout the period or periods during which the acts or failures to act giving rise to such liability occurred.

(2) Limitation.--The amount of the specified liability loss for any taxable year shall not exceed the amount of the net operating loss for such taxable year.

In sum, a taxpayer is entitled to the 10-year carryback for specified liability losses under section 172(f)(1)(B) if: (1) The specified liability loss is taken into account in computing

the taxpayer's net operating loss for the taxable year; (2) the expense generating the specified liability loss is deductible under chapter 1 of the Internal Revenue Code; (3) the liability arose under a Federal or State law; (4) the act or failure to act which gave rise to the liability occurred at least 3 years before the taxable year at issue; (5) the taxpayer used the accrual method of accounting throughout the period in which the acts or failures to act giving rise to the liabilities occurred; and (6) the specified liability loss does not exceed the taxpayer's net operating loss for the year. See Sealy Corp. v. Commissioner, 107 T.C. 177, 183 (1996), affd. 171 F.3d 655 (9th Cir. 1999).[3]

Petitioner contends that it properly carried back to 1984 the State taxes and interest on Federal and State taxes that Lynchburg paid during 1992.[4] Petitioner argues that the State

---

[3]In the Omnibus Consolidated and Emergency Supplemental Appropriations Act for 1999 (OCESAA), Pub. L. 105-277, sec. 3004(a), 112 Stat. 2681, 2681-905, Congress amended the definition of a specified liability loss under sec. 172(f)(1)(B) to limit it to a liability under a Federal or State law requiring: (1) The reclamation of land; (2) the decommissioning of a nuclear power plant; (3) the dismantlement of a drilling platform; (4) the remediation of environmental contamination; or (5) a payment under any workers compensation act. The above-described amendment was made effective with respect to net operating losses arising in taxable years ending after Oct. 21, 1998. OCESAA sec. 3004(b), 112 Stat. 2681-906. The legislative history underlying the provision states: "No inference regarding the interpretation of the specified liability loss carryback rules under present law is intended." H. Conf. Rept. 105-825, at 1590 (1998).

[4]Notwithstanding the 10-year carryback period provided in
(continued...)

taxes and interest on Federal and State taxes constitute specified liability losses within the meaning of section 172(f)(1)(B) because: (1) The liabilities arose out of State and Federal law; (2) the acts (or failures to act) giving rise to the liabilities occurred during the years 1986, 1987, and 1988--more than 3 years before 1992; and (3) all its members used the accrual method of accounting throughout the period during which the acts or failures to act giving rise to the liabilities occurred.

Respondent maintains that the disputed taxes and interest do not constitute specified liability losses on the ground that section 172(f)(1)(B) was intended only to apply to a "narrow class of liabilities", such as tort and product liability expenses, to which the taxes and interest in question do not belong. Respondent further contends that, assuming arguendo that the disputed Federal and State interest payments constitute specified liability losses in the first instance, a portion of those interest payments do not qualify for carryback under section 172(f)(1)(B)(i) because they were not incurred at least 3 years prior to the beginning of the taxable year 1992. Specifically, respondent contends that all interest that accrued

---

[4](...continued)
sec. 172(b)(1)(C), specified liability losses may not be carried back to any taxable year beginning before Jan. 1, 1984. OBRA 1990 sec. 11811(b)(2)(B), 104 Stat. 1388-533.

within 3 years of January 1, 1992, does not satisfy the definition of a specified liability loss.

In Sealy Corp. v. Commissioner, supra, the taxpayer incurred certain costs during the period 1989 through 1992 including: (1) $1,808,309 paid to an accounting firm to comply with reporting, filing, and disclosure requirements imposed by the Securities and Exchange Act of 1934, ch. 404, 48 Stat. 881, currently codified at 15 U.S.C. secs. 77-78 (1994); (2) $100,650 paid to an accounting firm to examine and prepare financial statements regarding its employee benefit plans as required under the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829; and (3) $567,974 paid for accounting and legal services relating to an IRS audit of its 1987 tax return. The taxpayer considered the costs to be specified liability losses and filed an amended tax return for 1985 on which it claimed the costs as a loss carryback pursuant to section 172(b)(1)(C). The Commissioner issued a notice of deficiency to the taxpayer disallowing the loss carryback.

In Sealy, we sustained the Commissioner's determination that the disputed costs did not constitute specified liability losses within the meaning of section 172(f)(1)(B) because the disputed costs were not incurred "with respect to a liability which arises under a Federal or State law" as expressly mandated by section

172(f)(1)(B).  In rejecting the taxpayer's contention that its accounting and legal fees arose under Federal law, we stated:

> It is true that the 1934 Act, ERISA, and the Internal Revenue Code require petitioners to file financial reports and disclosure statements, maintain and provide books and records, and cooperate with IRS audits. However, those provisions do not establish petitioners' liability to pay the amounts at issue.  Petitioners' liability to pay those amounts did not arise until petitioners contracted for and received the services. Petitioners' choice of the means of compliance, and not the regulatory provisions, determined the nature and amount of their costs.  If, on the other hand, petitioners had failed to comply with the auditing and reporting requirements or had not obtained the particular services in issue here, their liability would have been in amounts not measured by the value of services.  Thus, petitioners' liability did not arise under Federal law. [Sealy Corp. v. Commissioner, 107 T.C. at 184.]

Our holding in Sealy Corp. v. Commissioner, supra, was affirmed by the Court of Appeals for the Ninth Circuit on the ground that the disputed expenses did not constitute "a liability arising out of a Federal or State law".  The court stated in pertinent part:

> It is, therefore, not simply an expense incurred with respect to an obligation under federal law but an act "giving rise" to the liability that qualifies as a specified liability under the statute.  The act giving rise to each of the liabilities in question was the contractual act by which Sealy engaged lawyers or accountants.  In each of these instances the act did not occur at least three years before the beginning of the taxable year.
>
> Sealy's argument essentially is that the act giving rise to the liability is the first event in a chain of causes which gives rise to the liability.  The argument leads to a reductio ad absurdum.  The organization of the company gave rise to an obligation

> to comply with all pertinent state and federal laws and thereby gave rise to the liabilities incurred in complying with these laws.  According to this logic, every corporation would have a specified liability carryback for all costs the corporation incurred to comply with relevant laws.  Congress did not create such a windfall. [Sealy Corp. v. Commissioner, 171 F.3d at 657-658.]

In Host Marriott Corp. v. United States, 113 F. Supp. 2d 790 (D. Md. 2000), affd. without published opinion ___ F.3d ___ (4th Cir. 2001), the question whether interest payments on Federal income tax deficiencies constitute specified liability losses within the meaning of section 172(f)(1) was resolved in favor of the taxpayer, who reported a CNOL for 1991.  In part, the CNOL consisted of approximately $46 million representing interest paid on tax deficiencies for the taxable years 1977, 1978, and 1979, and approximately $7 million in payments made on workers' compensation claims for injuries sustained before 1988.  The taxpayer argued that both categories of payments constituted specified liability losses that qualified for carryback to the taxable years 1984 and 1985.

In holding for the taxpayer, the District Court cited the plain language of section 172(f)(1)(B), stating:

> The statutory language clearly poses two restrictions upon application of the deduction in this case.  First, the claimed deduction must be a liability that arises out of Federal or state law.  Both of Plaintiff's losses meet this requirement.  The liability for federal income tax deficiency interest arises out of 26 U.S.C. §6601(a) under a rate established by §6621.  The liability for workers' compensation payments arises out of various state laws.  Second, the claims must arise

out of acts or failures to act more than three years earlier. In the case of the workers' compensation claims, the liability arose from injuries more than three years before the 1991 tax return. The federal income tax deficiency interest stems from the acts of filing tax returns in 1977, 1978, and 1979. [Host Marriott Corp. v. United States, 113 F. Supp. 2d at 793; fn. ref. omitted.]

The District Court disagreed with the Commissioner's arguments that the taxpayer's liability for interest on its Federal tax deficiencies arose: (1) In 1991 when it signed a settlement agreement for the taxable years 1977, 1978, and 1979; or (2) on a daily basis as it failed to pay the taxes in dispute. Id. at 793 n.2.

The Court of Appeals for the Fourth Circuit affirmed the District Court's holding by way of unpublished opinion.

We hold that the State tax deficiencies and interest on Federal and State tax deficiencies in issue in the instant case constitute specified liability losses within the meaning of section 172(f). Unlike the legal and accounting costs that we considered in Sealy Corp. v. Commissioner, 107 T.C. 177 (1996), petitioner's liability for State taxes, and interest thereon, arose under the laws of the State of Michigan, and petitioner's liability for interest on its Federal income tax deficiencies arose under Federal law--the Internal Revenue Code. State and Federal law expressly impose the liabilities for tax and interest at issue in this case.

In sum, we conclude that the expenses in question fit within the plain language of section 172(f)(1)(B). Under the circumstances, we are not persuaded by respondent's arguments that we should narrowly construe the provision to exclude those expenses or that respondent's interpretation of section 172(f)(1)(B) is compelled by the legislative history of the provision.

Additionally, we reject respondent's argument that all interest (Federal and State) that accrued within 3 years of January 1, 1992, should be excluded from the computation of petitioner's specified liability losses. Respondent relies on section 172(f)(1)(B)(i), which provides that, to qualify as a specified liability loss, the act (or failure to act) giving rise to such liability must occur at least 3 years before the beginning of the taxable year. Respondent contends that the act giving rise to interest on a tax deficiency arises daily as the taxpayer fails to pay the underlying tax.

We hold that the act giving rise to petitioner's liability for interest on its Federal and State tax deficiencies was the act of filing erroneous tax returns, and, as a consequence, failing to pay the correct amount of tax on or before the last date prescribed for payment. See Host Marriott Corp. v. United States, supra. Simply put, respondent's position confuses the method of computing interest under section 6621, under which

additional interest accrues each day that a tax liability remains unpaid, with the act giving rise to the liability for interest; i.e., failure to pay the tax on or before the prescribed date.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>pursuant to Rule 155</u>.