**MAJOR PAINT COMPANY, Standard Brands Paint Company, Standard Brands Liquidating Creditor Trust, and Standard Brands Paint Co., Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 02–5153.**

United States Court of Appeals, Federal Circuit.

DECIDED: June 27, 2003.

---

Thomas F. Joyce, Bell, Boyd & Lloyd LLC, of Chicago, IL, argued for plaintiffs-appellants. With him on the brief was David F. Heroy.

Charles Bricken, Attorney, Tax Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Eileen J. O'Connor, Assistant Attorney General, and Thomas J. Clark, Attorney.

Before MICHEL, Circuit Judge, ARCHER, Senior Circuit Judge, and LOURIE, Circuit Judge.

ARCHER, Senior Circuit Judge.

Major Paint Company, Standard Brands Paint Company, Standard Brands Liquidating Creditor Trust, and Standard Brands Paint Company ("Standard Brands" or "taxpayer") appeal the Court of Federal Claims' grant of summary judgment in favor of the government. *Standard Brands Liquidating Creditor Trust*

*v. United States,* 53 Fed.Cl. 25 (2002). The Court of Federal Claims held that costs Standard Brands expended on the hiring of outside professionals during bankruptcy proceedings ("capitalized bankruptcy costs") were not "specified liability losses" under § 172(f)(1)(B) of the Internal Revenue Code ("Tax Code" or "I.R.C.") and thus did not qualify for the special ten-year net operating loss carryback provided in I.R.C. § 172(b)(1)(C). I.R.C. § 172 (2000). Because we hold that the capitalized bankruptcy costs incurred by Standard Brands did not arise under a federal law, the Court of Federal Claims judgment is affirmed.

## BACKGROUND

Standard Brands Paint Company and its subsidiaries ("The Company") manufactured, distributed, and sold paint and related products in retail stores. In 1992, The Company petitioned the United States Bankruptcy Court for the Central District of California for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"). Under the supervision of the bankruptcy court, Standard Brands employed various legal, accounting, and other professionals who incurred fees and expenses. The bankruptcy court eventually entered awards of final compensation to the various professionals.

In its federal income tax returns for the taxable years ending January 1993 and January 1994, Standard Brands deducted some of the professional fees and expenses resulting from the bankruptcy and capitalized the remaining $5,429,186.[1] In 1998, Standard Brands filed a Form 1120X

("claim") for the taxable year ending January 1987. The claim applied a net operating loss deduction of $5,429,186 for the capitalized bankruptcy costs as a "specified liability loss" for the taxable year ending January 26, 1997, carried back to the taxable year ending January 25, 1987, pursuant to I.R.C. § 172. The claim sought a refund of $2,497,426 for that taxable year.

After reviewing Standard Brands' claim, the Internal Revenue Service ("IRS") issued a technical advice memorandum ("TAM") denying a loss deduction and in a later letter proposed disallowance of the claim. On April 5, 2000, Standard Brands filed a complaint seeking refund of taxes plus interest.

The Court of Federal Claims granted summary judgment in favor of the government. In its opinion, the court discussed the three cases that have dealt with this provision of the Tax Code: *Sealy Corp. v. Comm'r of Internal Revenue,* 171 F.3d 655 (9th Cir.1999) (*Sealy II*) (affirming *Sealy Corp. v. Comm'r of Internal Revenue,* 107 T.C. 177, 1996 WL 599766 (1996) (*Sealy I*)); *Host Marriott Corp. v. United States,* 113 F.Supp.2d 790 (D.Md.2000) (*Host Marriott I*), aff'd by *Host Marriott Corp. v. United States,* 267 F.3d 363 (4th Cir. 2001) (*Host Marriott II*) (adopting the district court's reasoning); and *Intermet Corp. v. Comm'r of Internal Revenue,* 117 T.C. 133, 2001 WL 1164198 (2001). Finding *Sealy II* the most analogous to the present case, the court held that "the connection between [Standard Brands'] capitalized expenses and the [B]ankruptcy [C]ode [was] too attenuated to meet the requirements of section 172(f)(1)(B)." *Standard Brands,* 53 Fed.Cl. at 28.

---

**1.** In December 1995, The Company filed for bankruptcy a second time; this time as a liquidation. A going out of business sale was approved by the bankruptcy court on June 14, 1996. Most of The Company's inventory was liquidated by the time it ceased retail operations in August 1996. Under the second bankruptcy plan, all of The Company's property, proceeds, claims, and actions were assigned to the Standard Brands Liquidating Creditor Trust. Only costs associated with the first bankruptcy are at issue in this case.

Standard Brands appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(3).

## ANALYSIS

■ The issue in this case is whether Standard Brands' capitalized bankruptcy costs were "specified liability losses" within the meaning of I.R.C. § 172(f)(1)(B). Such a question involves statutory construction, and we review the Court of Federal Claims' judgment *de novo*. *See Doyon, Ltd. v. United States*, 214 F.3d 1309, 1314 (Fed.Cir.2000).

■ During the relevant time period, Tax Code section 172(f) defined the term "specified liability loss" as follows:

(1) In general.—The term "specified liability loss" means the sum of the following amounts to the extent taken into account in computing the net operating loss for the taxable year....

(B) Any amount ... allowable as a deduction under this chapter with respect to a liability which arises under a Federal or State law, or out of any tort of the taxpayer if (i) In the case of a liability arising out of a Federal or State law, the act (or failure to act) giving rise to such liability occurs at least 3 years before the beginning of the taxable year.

I.R.C. § 172(f)(1)(B)(i). Thus, for this section to apply, there must have been an act which gave rise to liability under state or federal law and that act must have occurred more than three years prior to the tax year in question.

The IRS has not issued any regulations to aid us in interpreting I.R.C. § 172(f), nor does there appear to be any relevant legislative history. Additionally, whether the cost of hiring outside professionals during a bankruptcy proceeding is a liability arising under a federal law, and thus possibly eligible to be carried-back ten years as a specified liability loss under I.R.C. § 172(b)(1)(C), has not yet been determined by any appellate court. There are, however, several decisions in our sister circuits and the Tax Court which provide guidance for our analysis: *Sealy II*, 171 F.3d 655 (holding liabilities arising from professional fees paid to qualified public accountants to publish reports related to employee benefit plans as required by ERISA and those paid to lawyers and accountants to comply with an IRS audit did not arise under a federal law); *Host Marriott II*, 267 F.3d 363 (holding liabilities arising from a federal income tax deficiency and costs for workers' compensation payments did arise under federal and state law); and *Intermet Corp.*, 117 T.C. 133, 2001 WL 1164198 (holding liabilities arising from federal and state income tax deficiencies did arise under federal and state law).

In *Sealy II*, the Ninth Circuit examined professional fees incurred by the taxpayer in connection with complying with various federal statutes and an IRS audit. *Sealy II*, 171 F.3d 655. In holding that these fees were not specified liability losses, the court explained "[i]t is ... not simply an expense incurred with respect to an obligation under federal law [that meets the statutory definition of a specified liability loss] but an act 'giving rise' to the liability that qualifies as a specified liability under the statute." *Id.* at 657. The court explained that "[t]he act giving rise to each of the liabilities in question was the contractual act by which Sealy engaged lawyers or accountants." *Id.* The situation in *Sealy II* is easily contrasted with those in *Host Marriott II* and *Intermet*.

In *Host Marriott II*, the taxpayer sought, *inter alia*, to deduct the cost of federal income tax deficiency interest as a specified liability loss. *Host Marriott II*,

267 F.3d at 365. In that case, the Fourth Circuit adopted the district court's reasoning in *Host Marriott I* and affirmed its holding that the taxpayer's liability was a specified liability loss because the liability for federal income tax deficiency interest arose explicitly out of I.R.C. § 6601(a) under a rate established by § 6621.[2] *Id.* (citing *Host Marriott I,* 113 F.Supp.2d 790). This holding was premised on the fact that the existence of the tax deficiency interest liability and its amount was expressly set by federal law and not based upon the taxpayer's choice. *Host Marriott I,* 113 F.Supp.2d at 794. Indeed, *Host Marriott I* distinguished the facts of *Sealy I & II,* explaining that there the liability for the accounting and professional fees at issue did not arise under federal law because the statutory provisions did not establish the taxpayer's liability to pay the amounts at issue; rather, the taxpayer's choice of the means of compliance determined the nature and amounts of the costs. *Id.*

*Intermet* also involved a claim that liability arising from federal income tax deficiency interest constituted a specified liability loss under I.R.C. § 172(f). *Intermet Corp.,* 117 T.C. 133, 2001 WL 1164198. There the Tax Court, largely repeating the reasoning in *Host Marriott I,* ruled that such a liability did arise under a federal law because "Federal law expressly impose[d] the liabilities for tax and interest at issue in this case." *Id.* at 140. Additionally, the court's treatment of *Sealy I & II* was similar to that in *Host Marriott I:* the court noted that in *Sealy I & II* it was the taxpayer's choice of the means of compliance, not the regulatory provisions, which determined the nature and the amount of the liability. *Id.* at 138–39.

While these three cases are not binding on us, they are instructive. We agree with the Court of Federal Claims' conclusion here that two principles emerge from these cases: "arising out of a federal law" means more than just that the liability was incurred with respect to an obligation under a federal law; and the nature and amount of the liability must be traceable to a specific law and cannot be the result of choices made by the taxpayer or others. *Standard Brands,* 53 Fed.Cl. at 29. We adopt these principles.

At issue in this case is whether Standard Brands' liability for its capitalized bankruptcy costs arose out of a federal law. Standard Brands asserts that its liability does, namely, from the Bankruptcy Code, because the incurring of the capitalized bankruptcy costs followed automatically under the Bankruptcy Code once The Company filed for bankruptcy. As support for this position, Standard Brands emphasizes that the Bankruptcy Code makes the bankruptcy judge (not a contract between the parties) the determiner of if, when, and how much an outside professional will be paid. Thus, the logic continues, the costs for hiring outside professionals arises under the Bankruptcy Code.

The government argues that the taxpayers have not identified any provision of the Bankruptcy Code that mandated the employment of any professionals at all. The government further points out that the liability for the capitalized bankruptcy costs did not arise when The Company filed for bankruptcy; rather, it was when

---

**2.** I.R.C. § 6601(a) states that if an underpayment in tax is made, interest on such amount will be charged at the rate established under section 6621 until the proper amount is paid. I.R.C. § 6601(a) (2000). I.R.C. § 6621 sets forth a specific formula for determining the precise interest rate. I.R.C. § 6621 (2000).

the bankruptcy professionals performed services pursuant to their contracts of employment with the unsecured creditors' committee and the bankruptcy court approved payment of their fees that the liability arose.

The Bankruptcy Code does require the appointment of a committee of creditors holding unsecured claims. 11 U.S.C. § 1102(a)(1) (2000). And 11 U.S.C. § 1103(a) provides that the committee "may select and authorize the employment ... of one or more attorneys, accountants, or other agents, to represent or perform services for such committee." 11 U.S.C. § 1103(a) (2000). It is also true that the bankruptcy court may allow compensation different from that provided under any agreement between the committee and the professional for his services and that it is up to the bankruptcy judge to approve any compensation for such services. 11 U.S.C. §§ 328(a), 330, 331 (2000). However, to say that simply because an entity files for bankruptcy any costs for outside professionals "arise under" the bankruptcy code in the context of I.R.C. § 172(f) stretches the limits of the Tax Code. As the Ninth Circuit stated in *Sealy II*:

> Sealy's argument essentially is that the act giving rise to the liability is the first event in a chain of causes which gives rise to the liability. The argument leads to a reductio ad absurdum. The organization of the company gave rise to an obligation to comply with all pertinent state and federal laws and thereby gave rise to the liabilities incurred in complying with these laws. According to this logic, every corporation would have a specified liability carryback for all costs the corporation incurred to comply with relevant laws. Congress did not create such a windfall.

*Sealy II*, 171 F.3d at 657–58. The same can be said here. Contrary to Standard Brands' assertion, its fees incurred for hiring outside professionals did not automatically arise under the Bankruptcy Code from its having commenced a proceeding for a bankruptcy reorganization.

The government is correct: Standard Brands has not shown that the capitalized bankruptcy costs are anything beyond a liability with respect to an obligation under a federal (or state) law. As in *Sealy I & II*, the statutory provisions did not establish the taxpayer's liability to pay the amounts at issue. It was the creditors' committee and Standard Brands' choice, subject to final approval by the bankruptcy judge, of the means of compliance—which accounting and/or law firm to retain, what work to assign to them, the hourly rate to pay, etc.—which determined the nature and amount of the costs. Accordingly, Standard Brands' argument that the liability for the capitalized bankruptcy costs arose under federal bankruptcy law is unpersuasive.

The costs at issue merely arose with respect to an obligation under the Bankruptcy Code, a connection we hold to be too attenuated to meet the level of "arise under" necessary to qualify as a specified liability loss.

## CONCLUSION

Because Standard Brands has not shown that its capitalized bankruptcy costs arose under a federal law as required by I.R.C. § 172(f), the Court of Federal Claims' judgment is

*AFFIRMED.*