William H. KENNER and Eleanor V. Kenner, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16008.

United States Court of Appeals Seventh Circuit.

Jan. 5, 1968.

Rehearing Denied Feb. 14, 1968.

As Modified Feb. 27, 1968.

William H. Kenner, Barrington, Ill., for petitioner.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Gilbert E. Andrews, Robert

J. Campbell, Richard C. Pugh, Atty., Dept. of Justice, Tax Division, Washington, D. C., for respondent.

Before HASTINGS, Chief Judge, and CASTLE and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

William H. Kenner, present petitioner, suffered adverse decisions by the tax court, affirmed here.[1] On September 12, 1966, Dr. Kenner presented to Judge Withey of the tax court a document entitled "Petition for court to request U.S. Attorney General to investigate fraud upon the court". Judge Withey concluded the tax court lacked jurisdiction either to grant or deny the petition, and ordered it "lodged" with the tax court.

Dr. Kenner applied to this court for permission to appeal. We deemed the September 12 petition an application to set aside the previous decisions on the ground of fraud upon the tax court, the action of Judge Withey as dismissal for lack of jurisdiction, and the application for our permission to appeal as a petition to review, to be heard here in ordinary course.

Two questions are presented: (1) Whether the tax court has power to vitiate its own decision, once it has become "final" under the terms of 26 U.S.C. sec. 7481. (2) If the tax court has such power, what disposition of this case ought we to make?

Dr. Kenner has appeared *pro se*. An assistant attorney general has appeared for the commissioner of internal revenue. On the first issue, counsel for the commissioner tells us: "Although the matter is not entirely free from doubt, it is the considered position of the Commissioner that the Tax Court, vested with a part of the judicial power of the United States, has the inherent power to undo that which has been obtained from it by fraud and that the 'finality' provisions of Section 7481 do not deprive it of that power expressly or by necessary implication".

On the second issue, the commissioner contends that the allegations made by Dr. Kenner do not add up to fraud upon the court, and that dismissal was justified, but the commissioner suggests that if this court believes that "petitioners, appearing pro se, should be given a second chance, i. e., an opportunity to reframe their charges with the benefit of counsel, it is submitted that the Tax Court is the appropriate forum for that purpose".

Although the tax "court" is an independent agency in the executive branch[2] its powers and business are judicial in nature.[3] In some instances courts have been persuaded that because the tax court's responsibilities are judicial, it must have powers which courts have, though not spelled out by Congress.

Congress has, however, very explicitly provided at what point a decision of the tax court shall become final. Finality accrues promptly after the exhaustion of the possibilities of direct review.[4] In the instant case, the decisions became final in 1963 upon the expiration of the time allowed for filing a petition for certiorari to review our decision affirming the decision of the tax court.

It has been settled that such finality precludes any subsequent reconsideration by the tax court, at least on such grounds as mistake, newly discovered evidence,

---

1. Kenner v. C.I.R. (7th Cir. 1963), 318 F.2d 632.

2. 26 U.S.C. sec. 7441.

3. Stern v. Commissioner of Internal Revenue (3d Cir. 1954), 215 F.2d 701, 707; Reo Motors v. Commissioner of Internal Revenue (6th Cir. 1955), 219 F.2d 610, 612; Fairmont Aluminum Co. v. Commissioners of Int. Rev. (4th Cir. 1955), 222 F.2d 622, 627; Louisville Builders Supply Company v. C.I.R. (6th Cir. 1961), 294 F.2d 333, 339; MacRae v. Riddell (9th Cir. 1965), 350 F.2d 291; Maguire Industries v. United States, (1947), 86 F.Supp. 905, 114 Ct.Cl. 687; Quinn v. Hook (D.C.E.D., Pa.1964), 231 F.Supp. 718, Aff'd 341 F.2d 920.

4. 26 U.S.C. sec. 7481.

and the like.[5] It has also been decided that where such finality is reached by lapse of the prescribed period after decision by the Supreme Court it precludes further consideration by the Supreme Court on application for rehearing.[6]

■ If any room has been left for a relaxation of the statutory finality in order to permit the tax court to consider whether its decision is the product of a fraud upon it, that is all that has been left. Even that possibility seems to have been rejected by the eighth circuit in deciding that the tax court does not have equitable jurisdiction to set aside a decision, once it has become final, even, apparently, where fraud has been demonstrated.[7] We think, however, that it can be reasoned that a decision produced by fraud on the court is not in essence a decision at all, and never becomes final. It is most difficult to assume that Congress intended that a decision procured by fraud on the tax court could not be reached by any procedure in any tribunal, once the possibilities of direct review were exhausted. If a convincing case of palpable fraud on the court were presented, it is hard to justify a holding that it could not be considered. We conclude that the tax court has power to inquire into the integrity of its own decision even when such decision has become final and immutable in all other respects as a result of exhaustion of direct review or expiration of the time allowed for seeking review.

*Disposition of the instant petition.*

■ Dr. Kenner has made the broad assertion that the tax court decision "is tainted with fraud. The very temple of justice has been defiled with it". So general an assertion is not enough, and there is a heavy burden both of particularized pleading and of proof upon the one who seeks to impeach an order or decree of a court.[8] "There must be an offer to prove specific facts which will pretty plainly impugn the official record".[9] It "is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision".[10]

■ " 'Fraud upon the court' should, we believe, embrace only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication".[11]

With these standards in mind we have carefully examined Dr. Kenner's 24 page petition. It asserts that in a number of instances the decision of the tax court contained untrue statements as to matters of fact. These appear to be claims that some finding was not supported by evidence (in which event it could have been dealt with on review), or that the judge drew unfavorable inferences where the evidence presented a choice. No facts are suggested which would show

5. Lasky v. Commissioner of Internal Revenue (9th Cir. 1956), 235 F.2d 97, affirmed 352 U.S. 1027, 1 L.Ed.2d 598, 77 S.Ct. 594; Lentin v. Commissioner of Internal Revenue (7th Cir. 1957), 243 F.2d 907; Quinn v. Hook (D.C.E.D.Pa. 1964), 231 F.Supp. 718, aff'd 341 F.2d 920; Baglivo v. C.I.R. (D.C.E.D.Pa. 1964), 235 F.Supp. 493.

6. Helvering v. Northern Coal Co. (1934), 293 U.S. 191, 55 S.Ct. 3, 79 L.Ed. 281; Simpson & Co. v. Commissioner of Int. Revenue (1944), 321 U.S. 225, 64 S.Ct. 496, 88 L.Ed. 688; these were the two decisions cited in the per curiam order of the Supreme Court affirming *Lasky.*

7. Jefferson Loan Co. v. Commissioner of Internal Rev. (8th Cir. 1957), 249 F. 2d 364, 367.

8. Chicago Title & Trust Co. v. Fox Theatres Corporation (D.C.S.D.N.Y. 1960), 182 F.Supp. 18, 31.

9. United States ex rel. Accardi v. Shaughnessy (2d Cir. 1953), 206 F.2d 897, 904, dissenting opinion.

10. England v. Doyle (9th Cir. 1960), 281 F.2d 304, 309.

11. 7 Moore's Federal Practice, 2d ed., p. 512, ¶60.23.

that these errors, if they really are errors, were the result of some fraud upon the court.

The petition relates a number of incidents in which Dr. Kenner felt that agents of internal revenue service acted improperly or showed animus toward him. One agent, according to Dr. Kenner, solicited a bribe, although later investigation was said to clear the agent. Even assuming, however, that the agents were hostile or had an attitude of unfairness toward Dr. Kenner, the petition leaves us completely in the dark as to how the agents fraudulently induced the court to decide against Dr. Kenner. We suspect that Dr. Kenner may have proceeded upon the unfounded assumption that the acts of the agents of the internal revenue service are chargeable to the tax court.

The petition indicates that in Dr. Kenner's opinion several of his attorneys failed to represent his interests vigorously, and took steps which he feels were prejudicial to him. Here again he has failed to describe any fraud practiced upon the tax court.

█ One incident is worthy of specific mention. It appears that Dr. Kenner retained attorney John Potts Barnes, then in private tax practice, to represent him in dealings with the internal revenue service. Later, Barnes became chief counsel of the internal revenue service, and took positions in that capacity which were in conflict with positions taken while representing Dr. Kenner. It is true that Barnes may have done no more as chief counsel than sign letters or papers prepared by others. We think, however, that an attorney in this type of situation should scrupulously avoid even the appearance of representation of the second client in a matter on which he has represented the first. But even assuming impropriety in his conduct as counsel the facts alleged do not indicate that there was fraud on the tax court.

Dr. Kenner alleged further: "During the trial [before the court] Mr. Barnes was asked if he had any records regarding the Kenner case. His answer was negative. Following this short session on the stand, the Court recessed and the Judge invited Mr. Barnes into his chambers. * * * The Judge called John Potts Barnes into his chamber after John Potts Barnes finished his testimony on the stand—Judge [Mulroney] asked John Potts Barnes to his chambers, which shows that the Judge was biased".

If this occurred as alleged, it was unwise for the judge to have a private conversation with Mr. Barnes under the circumstances, because of the possibility of giving rise to suspicions such as Dr. Kenner suggests. But Dr. Kenner's petition, considered either as a whole or in its several aspects, fails to allege fraud upon the tax court with sufficient particularity to entitle it to further consideration.

█ We are of the opinion that the tax court had the power to consider a claim that fraud had been perpetrated on it even after the decision became final, but the present petition lacks sufficient substance. The tax court's dismissal of the petition is

Affirmed.