**Charles W. STICKLER, Jr., and Nellie M. L. Stickler, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 71–1765.

United States Court of Appeals, Third Circuit.

Submitted on Briefs June 20, 1972 Under Third Circuit Rule 12(6).

Decided July 14, 1972.

---

1. See Edwards v. Wainwright, 461 F.2d 238 (5th Cir. 1972).

Bernard J. O'Brien, Lawrence, Mass., F. Lee Bailey, Boston, Mass., for appellants.

Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks, Tax Div., Appellate Section, Dept. of Justice, Washington, D. C., Scott P. Crampton, Asst. Atty. Gen., Thomas L. Stapleton, Donald H. Olson, Attys., Tax Division, Dept. of Justice, Washington, D. C., for appellee.

Before ALDISERT, JAMES ROSEN and HUNTER, III, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM:

Income tax deficiencies were determined against the appellants for the years 1955 and 1956, including fraud penalties amounting to 50% of each of the principal deficiency determinations. The parties entered into a stipulation agreeing to a reduced amount, and the tax court entered a decision thereon. The Sticklers then brought a motion "for leave to file motion to withdraw and reform stipulation, further hearing and reconsideration, and to revise decision." An evidentiary hearing was held, and the motion was denied.

The Commissioner of Internal Revenue had initially determined deficiencies in the Sticklers' income taxes of $148,388.73 and $18,629.22 for each of the two years, respectively. After a se-

ries of conferences with the Commissioner's representatives, they filed a written settlement stipulation with the tax court.[1] On September 28, 1965, the court entered a decision pursuant to the stipulation.

On February 19, 1971, the motion to withdraw and reform stipulation and to revise decision was filed.[2] A hearing was held on April 14, 1971, and testimony was offered by the appellant Charles Stickler and Frederick McGavin, appellants' attorney of record at the time of stipulation.

The thrust of the motion is that the decision rendered almost six years earlier pursuant to a stipulation of the parties, was procured by fraud on the court. In support of the motion, appellants rely on the testimony of Mr. McGavin and a decision rendered by the tax court in Manu-Mine Research and Development Co. v. Commissioner, 26 T.C.M. 1259 (1967). Charles Stickler was president and majority stockholder of Manu-Mine and the funds involved in the 1965 deficiency determination against the Sticklers as individual taxpayers were the assets of Manu-Mine. McGavin indicated at the hearing that he advised appellants to sign the stipulation on the basis of representations by the agents of the Internal Revenue Service that they had irrefutable proof of fraud. The inducement for signing was allegedly supplied by the Government's promise that it would not proceed against Manu-Mine if the appellants signed the stipulation.

Appellants highlight their allegation of fraud on the court with the *Manu-Mine* decision, insofar as the tax court found that the Government had failed to prove by clear and convincing evidence that the corporate deductions claimed therein were the result of an intent to defraud.

▇ This Court's review is limited to the narrow issue of determining wheth-

---

1. The total deficiency determination of the Commissioner was compromised at approximately $112,000.

2. Rule 19(f) of the Tax Court Rules of Practice requires a motion to vacate or revise a decision to be filed within 30 days after the decision has been entered, except by special leave, 26 U.S.C.A.

er the tax court's denial of special leave was an abuse of the discretion vested in the tax court. See Toscano v. C. I. R., 441 F.2d 930 (9th Cir. 1971), Byrne dissenting, and cases cited. As the tax court noted in its memorandum and order of April 21, 1971, ordinarily "a decision of this Court becomes final 3 months after it is rendered, if no appeal has been taken within that period; and we are then powerless to set aside such a decision. Sections 7481, 7843 [3] (sic). Internal Revenue Code of 1954; Lasky v. Commissioner [of Internal Revenue, 9 Cir.,] 235 F.2d 97, aff'd per curiam 352 U.S. 1027 [77 S.Ct. 594, 1 L.Ed.2d 598." See also Schaffner v. Bingler, 268 F. 2d 76 (3d Cir. 1959); White's Will v. Commissioner of Internal Revnue, 142 F.2d 746, 748 (3d Cir. 1944); United States v. Howard, 296 F.Supp. 264 (D. Or.1968).

Although the authorities are not in agreement, an exception has been constructed to this jurisdictional bar allowing the tax court to reexamine an otherwise final decision in the event it is shown that such decision was produced by fraud upon the court. Kenner v. Commissioner of Internal Revenue, 387 F.2d 689 (7th Cir. 1968), cert. denied, 393 U.S. 841, 89 S.Ct. 121, 21 L.Ed.2d 112 (1968); Toscano v. C. I. R., *supra*. Contra: Jefferson Loan Co. v. Commissioner of Internal Revenue, 249 F.2d 364, 367 (8th Cir. 1957).

In *Kenner*, the court defined fraud upon the court as that "species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." The petitioner alleged that the agents of the I.R.S. acted improperly or showed animus toward him. The court concluded that "[E]ven assuming, however, that the agents were hostile or had

an attitude of unfairness toward Dr. Kenner, the petition leaves us completely in the dark as to how the agents fraudulently induced the court to decide against Dr. Kenner. We suspect that Dr. Kenner may have proceeded upon the unfounded assumption that the acts of the agents of the internal revenue service are chargeable to the tax court." 387 F.2d at 692. In *Toscano*, the phrase was said to apply to those "acts of the adverse party ' * * * as prevented the losing party from fully and fairly presenting his case or defense'."

■ The record in this case, as in *Kenner*, sheds no light on the allegation of fraud. The stipulations were entered into voluntarily. The "fraud," if any, practiced by the attorneys was nothing more than "some puffing of the supposed strength of the Government's position in the settlement negotiations." [4] Appellants cannot escape the intimation of their own conduct that indeed there may have been some doubt in their minds as to the absence of fraud respecting the unclaimed items of income for 1955 and 1956. They were in the best position to determine (a) whether they had in fact received those items of income on which the deficiency determinations were made, and (b) whether the fraud penalties assessed by the Commissioner were subject to clear and convincing proof by the Government in the tax court suit. With this presumption of knowledge, the Sticklers' election not to proceed to trial cannot be circumvented because of some misunderstanding between the parties or some "puffing" by the commissioner's representatives during settlement negotiation.

The conclusions of the tax court in *Manu-Mine* shed no light on what the Commissioner may have shown at the taxpayer's earlier trial, had the taxpayers not entered into the disputed stipulation. The nexus between the facts of *Manu-Mine* and the record before us is

3. 26 U.S.C. § 7483 was amended by Public Law 91–172, Title IX, § 959(a), 83 Stat. 734. The amendment changes the time within which a notice of appeal shall be

filed in the tax court from 3 months to 90 days.

4. Memorandum and order of tax court, appellee's brief, appendix B, p. 16.

attenuated at best. Furthermore, the taxpayers' contention that the Government represented that it would not proceed against Manu-Mine if taxpayers signed the stipulation is not substantiated by the record. Appellants were represented by counsel at all times during conferences with the I.R.S. Finally, appellant's claim that the Government instituted suit against Manu-Mine after the appeal period had run on the 1965 judgment is plainly incorrect. Manu-Mine instituted that action and the Commissioner was the respondent, as in all suits filed in the tax court alleging overpayments.

Appellants have had the benefit of an evidentiary hearing on their motion, in spite of a continued objection by the Government to the jurisdictional basis for such a hearing. The record of that hearing indicates an attempt by appellants to litigate the merits of the Commissioner's original deficiency determinations for 1955 and 1956. The tax court concluded that the appellants failed to demonstrate "fraud upon the court." We reach the same conclusion.

The order of the tax court will be affirmed.