121 T.C. No. 9

UNITED STATES TAX COURT

MED JAMES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 366-01.                    Filed September 9, 2003.

    R sent P a 30-day letter proposing a deficiency in
excess of $100,000 for P's tax year ended Jan. 31,
1994.  R subsequently issued a notice of deficiency to
P determining deficiencies in P's corporate income
taxes for its tax years ended Jan. 31, 1994, 1995, and
1996.  P filed a petition to this Court.  R and P
stipulated that P's deficiency in income tax for the
tax year ended Jan. 31, 1994, computed before allowance
for a net operating loss (NOL) carryback from the
subsequent tax year was $225,753.  After allowance for
the NOL carryback, P's deficiency for the tax year
ended Jan. 31, 1994, was $63,573.  The Court entered a
decision that there was a deficiency in income tax due
from P for the tax year ended Jan. 31, 1994, of
$63,573.  The decision became final on Sept. 3, 2002,
and R then assessed the $63,573 deficiency plus
interest.  R applied the increased interest rate under
sec. 6621(c), I.R.C., for the period beginning 30 days
after the 30-day letter was sent.  P paid the
deficiency and interest. On Mar. 17, 2003, P filed a
motion to redetermine interest.

Held:  The Court has jurisdiction under sec. 7481(c), I.R.C., to redetermine interest because P paid the deficiency plus interest claimed by R, filed the motion within 1 year of the date the Court's decision became final, and the deficiency and interest were assessed under sec. 6215, I.R.C.

Held, further:  Under sec. 6621(c), I.R.C., and the regulations promulgated thereunder, a large corporate underpayment exists if the excess of the amount of tax imposed by the Internal Revenue Code (excluding interest, penalties, additional amounts, and additions to tax) for the taxable period over the amount of tax paid on or before the return due date ("the threshold underpayment") exceeds $100,000. Because the Code allows a deduction for NOL carrybacks for purposes of determining the tax imposed for the taxable year, the tax imposed by the Code for the year in issue was $63,573.

Held, further:  For purposes of sec. 6621(c), I.R.C., threshold underpayments of tax are generally determined only when an assessment is made with respect to a taxable period.  Sec. 301.6621-3(b)(2)(iii)(A), Proced. & Admin. Regs.  The interest rate under sec. 6621(c), I.R.C., "hot interest", does not apply if, after a Federal court determines a taxpayer's liability for a period, the threshold underpayment for that taxable period does not exceed $100,000.  Sec. 301.6621-3(b)(2)(iii)(B), Proced. & Admin. Regs.  After the Court entered its decision, P's liability for the tax year in issue was $63,573.  Therefore, sec. 6621(c), I.R.C., does not apply.


Ron R. Morgan, for petitioner.

Eric Johnson, for respondent.

OPINION

GOEKE, Judge:  On March 17, 2003, petitioner filed a motion to redetermine interest under section 7481(c) and Rule 261.[1] Petitioner, a C corporation, claims that it overpaid interest relating to its income tax liability for its tax year ended January 31, 1994, because respondent erroneously applied the increased interest rate under section 6621(c) ("hot interest"). The substantive issue for decision is whether a net operating loss (NOL) carryback which reduces an underpayment of tax for a preceding year below $100,000 is disregarded for purposes of determining whether a large corporate underpayment exists and whether hot interest applies.  We hold that the NOL is not disregarded and hot interest does not apply.  Before we address the substantive issue, we explain the Court's jurisdiction to decide the matter.

## Background[2]

On November 5, 1998, respondent sent a letter of proposed deficiency (30-day letter) to petitioner proposing a deficiency

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at the time of the filing of the motion, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]For purposes of deciding this motion, we rely in part on the information contained in the petitions, answer, stipulations, and decision document.  The facts subsequent to the date the decision was entered are based on the parties' undisputed factual allegations.

in excess of $100,000 for petitioner's tax year ended January 31, 1994. On October 6, 2000, respondent issued a notice of deficiency to petitioner for its tax years ended January 31, 1994, 1995, and 1996. In the notice, respondent determined deficiencies in petitioner's corporate income tax of $225,753, $111,191, and $184,219, respectively, for those years. Respondent also determined that petitioner was liable for an addition to tax under section 6651(a)(1) of $24,923.25 for the tax year ended January 31, 1995.

Petitioner filed a petition and an amended petition with this Court seeking a redetermination. In the petitions, petitioner disputed the entire amounts determined by respondent for the tax years ended January 31, 1994, and January 31, 1995, and $14,745 of the amount determined for the tax year ended January 31, 1996. Among other allegations, petitioner alleged that it was entitled to an additional deduction of $900,000 for the tax year ended January 31, 1995, for an accrued liability to an insurance company. On the basis of this allegation, petitioner alleged that it was entitled to an NOL of $605,067 for the tax year ended January 31, 1995.

On March 18, 2002, the parties filed a stipulation of agreed issues with the Court. Among other concessions, respondent conceded that for the tax year ended January 31, 1995, petitioner was entitled to an additional deduction of $900,000 and incurred

an NOL of $605,067. In addition, the parties stipulated that they had not reached an agreement as to the application of all or part of the NOL carryback to the tax year ended January 31, 1994.

On June 4, 2002, the parties filed the following stipulation with respect to petitioner's income tax liability for the tax year ended January 31, 1994:

Tax liability, computed without allowance
for net operating loss carryback
from the tax year ended January 31, 1995,
to the tax year ended January 31, 1994      $225,753.00

Tax assessed and paid                               0.00

Deficiency, without allowance for net
operating loss carryback                      225,753.00

Reduction in liability due to net
operating loss carryback                      162,180.00

Deficiency, after allowance for net
operating loss carryback                       63,573.00

It is further stipulated that interest will be assessed
as provided by law on the deficiencies due from
petitioner.

It is further stipulated that, effective upon the entry
of this decision by the Court, the petitioner waives
the restrictions contained in I.R.C. §6213(a)
prohibiting assessment and collection of the
deficiencies (plus statutory interest) until the
decision of the Tax Court becomes final.

On June 5, 2002, the Court entered a decision that there were deficiencies in income tax due from petitioner for the tax years ended January 31, 1994, 1995, and 1996, in the amounts of $63,573, $0, and $169,474, respectively, and that there was no addition to tax under section 6651(a)(1) for the tax year ended

January 31, 1995. The decision document reflected an agreement by the parties: (1) The Court could enter the decision in accordance with the stipulation of the parties submitted therewith; (2) interest would be assessed as provided by law on the deficiencies due from petitioner; and (3) effective upon the entry of decision, petitioner waived the restrictions prohibiting assessment and collection of the deficiencies, plus statutory interest, until the decision of the Court became final. The decision became final on September 3, 2002.

On September 9, 2002, respondent issued a notice to petitioner reflecting an assessment of tax and interest of $63,573 and $99,100.97, respectively, for the tax year ended January 31, 1994. Respondent subsequently issued a second notice, dated October 14, 2002, which included a tax due of $162,673.97. This notice also included a penalty of $317.86.[3] In calculating interest, respondent applied the normal interest rate prescribed under section 6621(a)(2) for the period April 15, 1994, until December 5, 1998. This computation included restricted interest on $225,753 for the period April 15, 1994, until April 15, 1995, and normal interest on $63,573 from April 15, 1995, until December 5, 1998. On December 5, 1998, respondent began applying the increased interest rate prescribed

_____

[3]The evidence in the record reflects that the penalty was based on the failure to timely pay the assessment amount.

under section 6621(c).  Petitioner has paid the deficiency assessed for the tax year ended January 31, 1994, plus the interest and penalties claimed by respondent.

Petitioner provided interest and penalty detail reports calculating petitioner's interest liability applying section 6621(c) and not applying section 6621(c).  If we decide that section 6621(c) does apply, petitioner does not dispute the accuracy of respondent's original interest computation.  In the event we decide that section 6621(c) does not apply, respondent concedes that petitioner's interest computation is correct.  The interest in dispute is $12,104.88.

### Discussion

The parties dispute whether the increased interest rate prescribed under section 6621(c), or "hot interest", applies.[4] Petitioner claims that hot interest does not apply because the deficiency amount decided by this Court and assessed by respondent did not exceed $100,000.  Respondent contends that for purposes of applying hot interest the underpayment of tax is the amount computed before allowance of any NOL carryback.  Before we

---

[4]The increased interest rate assessed on large corporate underpayments is commonly known as "hot interest".  RHI Holdings, Inc. v. United States, 142 F.3d 1459, 1460 (Fed. Cir. 1998); Saltzman, IRS Practice and Procedure, par. 6.02[3][e] (2d ed. 1991); Abreau, "Distinguishing Interest from Damages: A Proposal for a New Perspective", 40 Buff. L. Rev. 373, 395 (1992).

address this issue, we explain this Court's jurisdiction to redetermine interest.[5]

I.  Jurisdiction

Generally, this Court lacks jurisdiction over issues involving interest.  Bax v. Commissioner, 13 F.3d 54, 56 (2d Cir. 1993); ASA Investerings Pship. v. Commissioner, 118 T.C. 423, 424 (2002); LTV Corp. v. Commissioner, 64 T.C. 589, 597 (1975). However, we do have jurisdiction to redetermine interest in certain limited circumstances.  Section 7481(c) provides:

> SEC. 7481(c).  Jurisdiction Over Interest Determinations.--
>
> (1) In General.--Notwithstanding subsection (a), if, within 1 year after the date the decision of the Tax Court becomes final under subsection (a) in a case to which this subsection applies, the taxpayer files a motion in the Tax Court for a redetermination of the amount of interest involved, then the Tax Court may reopen the case solely to determine whether the taxpayer has made an overpayment of such interest or the Secretary has made an underpayment of such interest and the amount thereof.
>
> (2) Cases to which this subsection applies.-- This subsection shall apply where--
>
> > (A)(i) an assessment has been made by the Secretary under section 6215 which includes interest as imposed by this title, and
> >
> > > (ii) the taxpayer has paid the entire

---

[5]In Pen Coal Corp. v. Commissioner, 107 T.C. 249, 254 (1996), we held that we lacked jurisdiction to redetermine a taxpayer's liability for hot interest in deficiency proceedings. We explicitly left for another day whether we have jurisdiction to determine liability for hot interest in a supplemental proceeding commenced pursuant to sec. 7481(c) and Rule 261.  Id.

> amount of the deficiency plus interest
> claimed by the Secretary, and
>
> (B) the Tax Court finds under section 6512(b)
> that the taxpayer has made an overpayment.
>
> (3) Special rules.--If the Tax Court determines
> under this subsection that the taxpayer has made an
> overpayment of interest or that the Secretary has made
> an underpayment of interest, then that determination
> shall be treated under section 6512(b)(1) as a
> determination of an overpayment of tax.  An order of
> the Tax Court redetermining interest, when entered upon
> the records of the court, shall be reviewable in the
> same manner as a decision of the Tax Court.[6]

We have jurisdiction to redetermine interest under section 7481(c) when: (1) The entire amount of the deficiency plus the entire amount claimed by the Commissioner as interest on the deficiency has been paid; (2) a timely motion to redetermine interest has been filed; and (3) an assessment has been made by the Commissioner under section 6215 which includes interest. Rule 261; ASA Investerings Pship. v. Commissioner, supra at 425; Bankamerica Corp. v. Commissioner, 109 T.C. 1, 6-7 (1997).

Petitioner has paid the entire amount of the deficiency for the tax year ended January 31, 1994, plus the entire amount of

---

[6]Under sec. 7481(a), a decision of this Court becomes final "after the exhaustion of the possibilities of direct review". This finality generally precludes any subsequent consideration by the Court.  Kenner v. Commissioner, 387 F.2d 689, 690 (7th Cir. 1968); ASA Investerings Pship. v. Commissioner, 118 T.C. 423, 425 n.3 (2002).  Sec. 7481(c) "'specifically carves out an exception to the rule on the finality of our decisions'; a prerequisite for invoking that exception is a final decision of this Court."  ASA Investerings Pship. v. Commissioner, supra at 425 n.3 (quoting Bankamerica Corp. v. Commissioner, 109 T.C. 1, 8-9 (1997)).

interest (and penalties) related to the deficiency.  Petitioner's motion to redetermine interest was filed on March 17, 2003, which date was within 1 year of the date the Court's decision became final.  Thus, petitioner has satisfied the first two jurisdictional prerequisites.

Section 6215 requires a petition filed by the taxpayer with this Court and an amount redetermined as a deficiency by a decision of the Court which has become final.  ASA Investerings Pship. v. Commissioner, supra at 426.  These requirements have been met because a petition was filed to this Court and the Court entered a decision, which has become final, redetermining an amount as a deficiency.  The evidence in the record reflects that respondent has assessed the deficiency and interest for the tax year ended January 31, 1994.  Accordingly, we hold that the requirements of section 7481(c) have been met and we have jurisdiction to determine whether petitioner made an overpayment of interest.

II.  Applicable Interest Rate

Interest on underpayments of tax is generally imposed at the normal underpayment rate of the Federal short-term rate plus 3 percentage points.  Secs. 6601(a), 6621(a)(2).  Section 6621(c) imposes an additional 2-percent interest rate, called hot interest, on large corporate underpayments.  In the present case, if applicable, this additional interest would be imposed by

section 6621(c)(2)(A)(i) 30 days after November 5, 1998, the date respondent sent the 30-day letter.  At all times that hot interest might apply in this case, the underlying tax to which it would apply was $63,573, which is less than the $100,000 threshold for a large corporate underpayment and the application of hot interest.[7]  Sec. 6621(c)(3)(A).  Nevertheless, respondent maintains that because the pre-NOL liability for the year ended January 31, 1994, was $225,753, hot interest should apply.[8]  Thus, the case before us turns on whether the amount subject to the threshold determination should be reduced by the NOL[9] from the tax year ended January 31, 1995.  Hot interest applies only to periods after the "applicable date".  Sec. 6621(c)(1); sec.

---

[7]In addition to applying to the underlying tax, hot interest applies to any interest, penalties, additional amounts, and additions to tax imposed with respect to the underlying tax; however, the threshold amount is determined based only on the underlying tax.  Sec. 301.6621-3(b)(2)(i) and (ii), Proced. & Admin. Regs.

[8]The evidence in the record reflects that the tax shown as due on petitioner's return for the tax year ended Jan. 31, 1994, was zero.

[9]An NOL is generally defined as the excess of deductions over gross income.  Sec. 172(c).  Sec. 172 provides specific rules allowing NOLs to be carried back to preceding taxable years and carried forward to future years to reduce a taxpayer's taxable income.  Sec. 172(a) allows as a deduction for the taxable year an NOL carryback.  If the amount of tax is reduced by reason of an NOL carryback, the reduction in tax does not affect the computation of interest under sec. 6601 for the period ending with the filing date for the taxable year in which the NOL arises.  Sec. 6601(d)(1); see also Manning v. Seeley Tube & Box Co., 338 U.S. 561, 570 (1950); Intel Corp. & Consol. Subs. v. Commissioner, 111 T.C. 90, 95 (1998).

301.6621-3(c)(1), Proced. & Admin. Regs. In the case of any underpayment of a tax to which the deficiency procedures apply, the applicable date is the 30th day after the earlier of the date on which the Commissioner sends the 30-day letter or the notice of deficiency. Sec. 6621(c)(2); sec. 301.6621-3(c)(2), Proced. & Admin. Regs. Letters or notices involving amounts not greater than $100,000 (determined by not taking into account any interest, penalties, or additions to tax) are disregarded for purposes of determining the applicable date.[10] Sec. 6621(c)(2)(B)(iii).

It is undisputed that petitioner was liable for interest on the original understatement of $225,753 for the period from the due date of the return for the tax year ended January 31, 1994, to the due date of the return for the tax year ended January 31, 1995. Additionally, it is undisputed that from the due date of the return for the taxable year ended January 31, 1995, until the date paid in full, petitioner was generally liable for interest

---

[10]As originally enacted, sec. 6621(c) did not contain the provision disregarding letters or notices involving amounts not greater than $100,000. The Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1463(a), 111 Stat. 1057, added sec. 6621(c)(2)(B)(iii), applicable for purposes of determining interest for periods after Dec. 31, 1997. The legislative history indicates that Congress was concerned that minor mathematical errors by the taxpayer might result in the application of hot interest to a subsequently identified income tax deficiency. H. Rept. 105-148, at 642 (1997), 1997-4 C.B. (Vol. 1) 319, 964. The Commissioner has not updated the regulations promulgated under sec. 6621(c) to reflect this change.

on the reduced amount of $63,573.[11]  The parties agree that the normal underpayment rate under section 6621(a)(1) applies from the due date of the return for the tax year ended January 31, 1994, until December 5, 1998.[12]

Petitioner argues that hot interest does not apply because the underpayment of tax for the tax year ended January 31, 1994, was $63,573, which is below the $100,000 amount required to trigger application of the increased interest rate.  Petitioner claims that the deficiency amount decided by this Court and then assessed by respondent is the proper amount to use in determining whether hot interest applies.

Respondent contends that hot interest applies because it is undisputed that before the carryback of the NOL from the tax year ended January 31, 1995, petitioner's corporate income tax was understated by $225,753.  Respondent's argument is based on the position that an NOL carryback, regardless of whether it is applied preassessment or postassessment, does not reduce the amount of the underpayment for an earlier taxable period.

---

[11]The interest and penalty detail reports computing the amount of interest owed by petitioner state that the period from July 5, 2002, through Sept. 9, 2002, was an "interest free period".

[12]The interest computation report prepared by respondent states that the 30-day letter date was Nov. 5, 1998.  Respondent started imposing hot interest on Dec. 5, 1998.  If we decide that there was a large corporate underpayment, then petitioner does not challenge the use of this date as the applicable date.

A threshold underpayment of tax is defined for this purpose as the excess of a tax imposed by the Internal Revenue Code (the Code) (exclusive of interest, penalties, additional amounts, and additions to tax) for the taxable period over the amount of tax paid on or before the last date prescribed for payment.  Sec. 301.6621-3(b)(2)(ii), Proced. & Admin. Regs.  This case turns on when the tax imposed by the Internal Revenue Code for purposes of determining the amount of a threshold underpayment is determined.  If determined at the time hot interest starts to accrue, when the tax was assessed, or after this Court's decision, petitioner prevails.  If determined at the time petitioner's return was filed, respondent prevails.  On the basis of the Code and the regulations, we hold that the determination in this case is made no sooner than the time of entry of our decision that there was a deficiency of $63,573.

The first step is to determine the amount of tax imposed by the Code on petitioner for the tax year ended January 31, 1994.[13] Section 11(a) imposes a tax for each tax year on the taxable income of a corporation.  Taxable income is the corporation's gross income minus the deductions allowed by chapter 1 of the Code.  <u>Lastarmco, Inc. v. Commissioner</u>, 79 T.C. 810, 812 (1982),

---

[13]The taxable period in this case is the taxable year because the taxes at issue are income taxes imposed by subtitle A of the Code.  Sec. 6621(c)(3)(B); sec. 301.6621-3(b)(4), Proced. & Admin. Regs.

affd. 737 F.2d 1440 (5th Cir. 1984); sec. 1.11-1(b), Income Tax Regs.  Section 172(a) allows as a deduction for the taxable year an NOL carryback.  NOLs in tax years beginning before August 6, 1997, may generally be carried back to the 3 years preceding the loss year and then forward to 15 years following the loss year. Sec. 172(b)(1)(A); Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1082(a), 111 Stat. 950; see also Intermet Corp. & Subs. v. Commissioner, 117 T.C. 133, 136 n.1 (2001).

At the time petitioner filed its Federal income tax return for the tax year ended January 31, 1994, it understated its income tax by $225,753.  The tax shown as due on petitioner's return for the year was zero.  The parties agree that for the tax year ended January 31, 1995, petitioner incurred an NOL which it was entitled to carry back to the year in issue.  Section 172(a) treats the NOL carryback as a deduction from petitioner's income. This deduction reduced petitioner's taxable income, and correspondingly reduced its tax, as imposed by the Code, for the tax year ended January 31, 1994, to $63,573.  Therefore, under a straightforward application of the statute and the Commissioner's own regulations, the excess of the tax imposed by the Code for the tax year at issue over the amount of tax paid on or before the return due date was $63,573.

This interpretation is consistent with other parts of the regulations that discuss when an underpayment is determined. Section 301.6621-3(b)(2)(iii), Proced. & Admin. Regs., provides:

> (iii) When determined--(A) In general.  The existence of a threshold underpayment of a tax and the amount of a large corporate underpayment are generally determined only when an assessment is made with respect to the taxable period.  Thus, the amount of a deficiency or proposed deficiency set forth in a letter or notice pursuant to which the applicable date is determined (under paragraph (c) of this section) does not determine whether there is a large corporate underpayment.
>
> (B) Judicial determinations. Notwithstanding any prior assessment made with respect to a taxable period, the section 6621(c) rate does not apply if, after a federal court determines the taxpayer's liability for a period, the threshold underpayment for that taxable period does not exceed $100,000.  See Example 3 in paragraph (d) of this section.

Section 301.6621-3(d), Examples (2) and (3), Proced. & Admin. Regs., illustrate the application of the above regulations.  In Example 2, involving a corporation that petitions the Tax Court for redetermination of a deficiency in its income tax, the date of the Tax Court's determination is the operative date for purposes of determining the threshold underpayment of tax.  In Example 3, the Commissioner examines the taxpayer's return and subsequently sends a 30-day letter proposing a deficiency of $450,000 and then a notice of deficiency determining a $300,000 deficiency.  The taxpayer does not file a petition to the Tax Court, and the Commissioner

assesses the $300,000.  The taxpayer then pays the amount assessed and files a claim for refund.  A Federal district court determines that, exclusive of interest and penalties, the taxpayer overpaid its income tax by $250,000.

Example 3 states that at the time of the assessment there was a large corporate underpayment of $300,000.  However, the example goes on to state that because of the district court's decision that the taxpayer's underpayment, exclusive of interest and penalties, was only $50,000, the taxpayer does not have a large corporate underpayment.

Respondent argues that despite the language contained in the above regulations, petitioner had a large corporate underpayment. With respect to section 301.6621-3(b)(2)(iii)(A), Proced. & Admin. Regs., respondent claims that the term "generally" indicates that assessments and abatements of assessment are not necessarily dispositive.  We disagree with respondent's interpretation.

Section 301.6621-3(b)(2)(iii), Proced. & Admin. Regs., and Examples 2 and 3 indicate that the assessment date is generally the operative date for purposes of determining whether there is an underpayment of tax exceeding $100,000.  If the assessment reflects an underpayment exceeding $100,000, then there is a large corporate underpayment at that time.  However, if after a judicial determination the taxpayer's liability is determined to

not exceed $100,000, then there is no large corporate underpayment and hot interest does not apply. The use of the word "generally" in section 301.6621-3(b)(2)(iii)(A), Proced. & Admin. Regs., accounts for judicial determinations. A subsequent judicial determination overrides a previous assessment and represents the operative date for purposes of determining whether there is a large corporate underpayment. As illustrated by example 3 in the regulations, this concept is important in the case of a taxpayer seeking a refund in a Federal district court because any deficiency will generally be assessed before the judicial determination is made. However, in proceedings properly before this Court, the Commissioner generally does not assess the deficiency until the Court's decision becomes final. In this case, after the decision became final, respondent assessed the deficiency of $63,573. Therefore, the assessment in this case did not reflect a threshold underpayment of tax exceeding $100,000.

With respect to section 301.6621-3(b)(2)(iii)(B), Proced. & Admin. Regs., respondent claims that the Court's decision determined a deficiency, but it did not determine any issue with respect to the existence of a large corporate underpayment. Respondent contends that there was a large corporate underpayment because from at least the return due date for the tax year ended January 31, 1994, until the return due date for the tax year

ended January 31, 1995, petitioner had an underpayment with respect to the tax year ended January 31, 1994, that exceeded $100,000.

Section 301.6621-3(b)(2)(iii)(B), Proced. & Admin. Regs., plainly provides that section 6621(c) does not apply if, after this Court determines the taxpayer's liability for a period, the threshold underpayment for the taxable period does not exceed $100,000. The Court had no jurisdiction to make a determination with respect to petitioner's interest liability because section 7481(c) was triggered only after the decision became final and respondent assessed the deficiency. Pen Coal Corp. v. Commissioner, 107 T.C. 249, 254 (1996). The Court did decide that the deficiency in petitioner's income tax for the tax year ended January 31, 1994, was $63,573. Respondent assessed this amount after the decision became final. Under the regulations, the Court's decision and subsequent assessment establish that there was not a threshold underpayment of tax exceeding $100,000 for purposes of section 6621(c).

Finally, respondent relies on one sentence in the preamble to the regulations to support his position that the amount of the underpayment should be determined without consideration of any NOL carryback. The entire paragraph containing the sentence provides:

Post-Assessment Determinations of the Amount of the
Threshold Underpayment

Commentators argued that the section 6621(c) rate
should not apply if it is determined after assessment
that the threshold underpayment is less than $100,000.
The section 6621(c) rate does not apply if, as a result
of a full or partial abatement of an assessment to
correct an administrative error on the part of the
Service, the taxpayer's threshold underpayment does not
exceed $100,000.  The final regulations also provide
that the section 6621(c) rate does not apply, if, as a
result of a court determination of the taxpayer's
liability, the threshold underpayment is less than
$100,000.  However, a net operating loss or credit
carryback does not reduce the amount of the threshold
underpayment for an earlier taxable period.  [T.D.
8447, 1992-2 C.B. 313, 315; emphasis added.]

The heading of the paragraph indicates that this portion of

the preamble is referring to postassessment determinations that

potentially affect the amount of a threshold underpayment.  In

such a situation, the preamble states that an NOL does not reduce

the amount of an underpayment for an earlier taxable period.  The

instant case does not involve a postassessment determination.

Rather, at the time of the Court's decision and the subsequent

assessment, the parties were fully aware of the NOL, and

petitioner's liability for the tax year at issue was computed

with allowance for the NOL carryback.

The regulations do not state that a liability or threshold

underpayment is not adjusted to account for an NOL for purposes

of determining whether section 6621(c) applies.  Rather, the

regulations generally provide that if the liability assessed by

respondent or decided by this Court does not exceed $100,000,

then hot interest does not apply. As explained earlier, the assessment date is generally the operative date for purposes of determining whether there is a large corporate underpayment and hot interest applies. If the liability is subsequently redetermined by a Federal court, then the operative date is when the judicial determination is made. Because petitioner did not have a threshold underpayment of tax exceeding $100,000 after this Court's decision or on the assessment date, section 6621(c) does not apply.[14]

Respondent's arguments in this case focus on petitioner's liability as of the return due date, without reference to any future events that might ultimately reduce petitioner's liability for the taxable year. This is consistent with the general rule of section 6601(d) that if the amount of income tax is reduced by the carryback of NOLs and capital losses, the reduction does not affect the computation of interest for the period ending with the filing date for the taxable year in which the NOL or capital loss arose. However, unlike normal interest, hot interest does not start to accrue until the applicable date.[15] This distinguishes

---

[14]We leave to another day whether an NOL carryback determination made postassessment or after a final judicial determination would affect the existence or amount of a threshold underpayment of tax.

[15]The legislative history of sec. 6621(c) indicates that Congress was concerned that corporations were allowed to deduct interest on tax obligations but that individuals were not.
(continued...)

the rule regarding NOLs in section 6601(d) from the position advanced by respondent in the context of section 6621(c), and it highlights the distinction in the statutory scheme between liability for interest and the proper rates of interest to apply. Our holding today is consistent with this statutory scheme and incorporates the mandate of the statute, the guidance set forth in respondent's own regulations, and the legislative history associated with the enactment of the increased interest rate rules.

III.  Conclusion

The statutes and regulations containing the interest provisions indicate that the purpose of section 6621(c) is to impose a higher rate of interest on corporate taxpayers if, after a letter or notice proposing or determining a deficiency exceeding $100,000 is sent to a taxpayer and payment is not promptly made, a judicial determination or assessment is made reflecting an underpayment exceeding $100,000.  In the instant case, the parties agreed and this Court decided that petitioner had a deficiency of $63,573 for the tax year ended January 31,

---

[15](...continued)
Imposing a $100,000 threshold and allowing corporations to avoid hot interest by paying the underpayment within 30 days after notice was provided indicates that Congress was reluctant to allow arbitrage activities by corporations accruing interest but did not want to penalize corporations with small underpayments or which promptly paid their tax liabilities.  H. Conf. Rept. 101-964 (1990), 1991-2 C.B. 560, 591.

1994, computed after allowance of the NOL carryback. That amount was assessed by respondent after this Court's decision became final. Although petitioner's underpayment at the time of the due date for the 1994 return was $225,753, petitioner was entitled under the Code to carry back its NOL from the subsequent year, resulting in a tax of $63,573 for petitioner's tax year ended January 31, 1994. The NOL arose more than 3-1/2 years before respondent sent the 30-day letter containing the proposed deficiency exceeding $100,000. Applying hot interest in this situation, where the amount of petitioner's liability decided by the Court, the amount assessed by respondent, and the tax imposed by the Code does not exceed $100,000, is contrary to the regulations. Accordingly, we hold that section 6621(c) does not apply under the facts of this case.

An appropriate order will be entered.